**Richmond**

LORENZO KENNARD WYNN

v.

COMMONWEALTH OF VIRGINIA

No. 1542-85

Decided November 17, 1987

COUNSEL

C. David Whaley (Elizabeth H. Dashiell; Morchower, Luxton & Whaley, on brief), for appellant.

Margaret Poles Spencer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLE, J.** — Lorenzo Kennard Wynn was tried by a jury and convicted of possession of marijuana with intent to distribute, possession of cocaine, attempted capital murder of a police officer, and use of a firearm in the commission of an attempted murder. He contends on this appeal (1) that the convictions for possession of cocaine and possession of marijuana with intent to distribute

should be reversed because the evidence was insufficient to support the convictions, and (2) that a new trial should be granted on the attempted capital murder and the use of a firearm in the commission of a felony because the trial court erred in not admitting evidence that the defendant had been threatened prior to the shooting, because the trial court did not give requested jury instructions on the lesser included offense of assault, and because the trial court refused to grant an instruction on self-defense. We agree and reverse the convictions for possession of cocaine and possession of marijuana with intent to distribute, and we remand the case for a new trial on the charges of attempted capital murder and the use of a firearm in the commission of the attempted murder.

## I. *The Drug Charges*

On August 12, 1985, Richmond Police detectives began surveillance of Gail Hope's apartment at 1446-E Clarkson Road, Richmond, Virginia. They observed the defendant enter this apartment with Hope at about 11:00 p.m. and at 1:00 a.m. on August 13, 1985, they saw him leave the apartment alone. He drove away in Hope's automobile. The detectives, wearing plain clothes and driving an unmarked police car, followed the defendant to a 7-11 convenience store. The defendant testified that when he left the apartment he knew he was being followed but did not know by whom. Further incidents that developed at the 7-11 store will be recited later.

Later in the night the police, pursuant to a search warrant, searched Hope's apartment. The apartment consisted of a large living room, a hallway with a kitchen on one side and a child's bedroom on the other side, and a master bedroom, furnace room and bathroom in the rear of the apartment. In the master bedroom at the rear of the apartment, the police found 1.21 grams of marijuana in the top drawer of a large chest of drawers, a razor blade with cocaine residue on the top of the dresser, and a clear plastic wrapper containing cocaine residue on the top of a small dresser. They also found 3.27 grams of cocaine in the butter tray of the kitchen refrigerator, a bag containing cocaine residue in a drawer in the kitchen, two pounds of marijuana packaged in six baggies on the floor behind the dresser in the child's bedroom, a clear plastic wrapper with cocaine on it in a living room trash can,

and a triple beam scale in the kitchen pantry. All of the drugs were concealed from view in closed drawers, cabinets and a refrigerator butter tray except the razor blade and the plastic bag with cocaine residue found on the dresser top in the bedroom. The police also found "male" clothing on a chair in the master bedroom. The evidence does not indicate what the clothing consisted of, who the clothes belonged to, or if they were the same size as clothes worn by the defendant. The police also found an envelope on a table in the living room. The envelope was addressed to the defendant at 1414-C Clarkson Road. The envelope had a brief handwritten note which read, "Lo don't take the key if you leave I'll be right back, Kenny." When he was arrested, defendant told the police that he lived at 1414-C Clarkson Road, a distance of about two blocks from the Hope apartment. At trial he testified that he was not staying at the Hope apartment, although from time to time he would spend the night there. He testified that he had been dating Hope for three weeks.

Wynn's first contention is that the evidence was insufficient to convict him of possession of cocaine or of possession of marijuana with intent to distribute. He argues that there is no evidence of actual physical possession of any drugs and insufficient evidence to show that he was aware of the presence and character of the drugs and to show that the drugs were subject to his dominion and control.

In reviewing the sufficiency of the evidence on appeal, the evidence must be viewed in the light most favorable to the Commonwealth, and the Commonwealth given all reasonable inferences fairly deducible therefrom. *Albert v. Commonwealth*, 2 Va. App. 734, 741, 347 S.E.2d 534, 538 (1986) (citing *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)).

> To support a conviction based upon constructive possession, "the Commonwealth must point to evidence of acts, statements or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control."

*Drew v. Commonwealth*, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (quoting *Powers v. Commonwealth*, 227 Va. 474, 476, 316

S.E.2d 739, 740 (1984)). "Under Code § 18.2-250, proof that contraband was found in premises owned or occupied by the defendant is insufficient, standing alone, to prove constructive possession." *Behrens v. Commonwealth*, 3 Va. App. 131, 135, 348 S.E.2d 430, 432 (1986); *see also Powers*, 227 Va. at 476, 316 S.E.2d at 740. Suspicious circumstances, including mere proximity, are insufficient to support a conviction. *Behrens*, 3 Va. App. at 135, 348 S.E.2d at 432 (citing *Garland v. Commonwealth*, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983); *Wright v. Commonwealth*, 217 Va. 669, 670, 232 S.E.2d 733, 734 (1977)).

The facts in the case *sub judice* are very similar to those in *Drew v. Commonwealth*, 230 Va. 471, 338 S.E.2d 844 (1986). In *Drew*, a search of a house revealed drugs in several places. The defendant, Drew, was outside the house, two doors away, when the search took place. A van owned by the defendant and a car registered to Cheryl McClarty were parked near the house. The police found McClarty in the master bedroom and found men's clothing as well as women's clothing hanging in the closet. The police found cocaine and drug paraphernalia in several places in the house. Four scales of different designs were found in three different rooms, including the living room. *Drew*, 230 Va. at 472-73. In the living room, the police also found a checkbook, a bank statement, a telephone bill, and a wallet containing vehicle registration cards, a driver's license, and a credit union voucher, all in the defendant's name and showing the house as his address. The court concluded that "[a]t most, the evidence establishes that Drew resided at 3317 Knox Street and that he was near the residence the night the cocaine was seized." *Drew*, 230 Va. at 474, 338 S.E.2d at 846; *see also Garland v. Commonwealth*, 225 Va. 182, 300 S.E.2d 783 (1983).

The circumstantial evidence in the instant case is insufficient to prove that the drugs and the paraphernalia found in Ms. Hope's apartment were within the dominion and control of the defendant. The police only observed the defendant enter the apartment once on August 12, 1985, when he remained for a brief period of time and left. Although men's clothing was found in the master bedroom, no evidence established what the clothes consisted of, who the clothing belonged to, or that the clothes were the defendant's size. The envelope found in the apartment indicated that the defendant resided at a different address. The defendant did admit

that he had been dating Hope for three weeks and that on occasion, he spent the night at her apartment. This admission, however, together with his visits from time to time over a three week period, creates only a mere suspicion. The evidence fails to establish a linkage or connection between Wynn and the drugs sufficient to prove that Wynn was aware of the presence and character of the drugs and to show that the drugs were subject to his dominion and control.

Upon our review of the evidence, we do not find sufficient credible evidence to support the drug-related convictions. Accordingly, we reverse both convictions.

## II. *The Attempted Murder Charge*

The Commonwealth charged Wynn with attempted capital murder of Detective C. A. Jackson on or about August 13, 1985, and with use of a firearm in the commission of the attempted murder. As a defense to these charges, Wynn contended that he did not intend to shoot anyone the night of the incident. He explained that he shot through the rear door of his car, and Detective Jackson was at the front of his vehicle. He claims that, at most, he was guilty of the lesser included offense of assault in violation of Code § 18.2-57.1. The trial court refused to admit evidence of Wynn's intent and to instruct the jury on assault. Wynn claims these omissions constitute reversible error. Wynn also argues that he acted in self-defense and that the trial court erred in refusing to grant a self-defense instruction.

At trial, Wynn attempted to present evidence of threats made upon his life by Gail Hope's former boyfriend within the three weeks preceding the shooting. He offered this evidence to show why he had the gun in his vehicle, to explain his conduct on the night in question, and to show his state of mind and intent when he was confronted by the police and then attempted to escape from them. The trial court refused to admit this evidence, but the defendant proffered for the record his testimony and that of his mother concerning threats made by William Rice, Hope's former boyfriend.

The proffered evidence discloses that one night within three weeks of the shooting, Rice appeared at Hope's apartment, where Wynn and a friend were visiting. Upon ascertaining that Wynn

was her boyfriend, Rice stated to Hope, in the presence of Wynn, "I'm going to kill him, too." He also stated if he caught Wynn driving her car, he would kill both of them. Wynn testified that Rice had a reputation for violence; that Hope told him that Rice had shot holes in her apartment and that he had seen them; and that he was afraid of him. The defendant also proffered the testimony of his mother, Patricia Bland, who testified that within two weeks of the shooting, her son told her he had been threatened by Rice; that he started carrying a gun after that; and that he was afraid. The trial judge concluded that this evidence was not sufficiently connected with the case to be relevant. Wynn was allowed only to testify that he carried a gun because he was scared and to protect himself. The court did not permit him to elaborate.

As previously noted, at approximately 1:00 a.m. on August 13, 1985, officers observed the defendant leave Hope's apartment. They followed the defendant as he drove to a 7-11 convenience store. The Commonwealth's evidence showed that Detectives Clark and Evans radioed for assistance, and two more unmarked police cars arrived. The detectives parked across the street from the store. When Wynn left the store, the police officers in the three unmarked cars followed him.

After following the defendant a short distance, one of the unmarked cars, driven by Detective Nicely with Detective Jackson in the passenger seat, pulled up in front of the vehicle the defendant was driving, forcing him to stop. The other two unmarked police cars pulled up and stopped behind the defendant. Detective Carter was in the car immediately behind the defendant, and Detectives Evans and Clark were in the rear vehicle. As Detective Jackson exited the passenger door of his vehicle and walked toward the defendant, he yelled, "police," although the defendant testified that he never heard this. Detective Nicely testified that he exited the vehicle on the driver's side and faced the defendant with his badge in hand. The defendant testified that he never saw Nicely. When Detective Jackson was four or five feet from the defendant, the defendant swerved Hope's car to the left and fired three shots out of the passenger side. None of the shots struck Detective Jackson. A bullet hole in Hope's car indicates that at least one of the shots was fired at a downward angle into the rear door of the car. The defendant drove away, and the three unmarked cars followed him.

After a two and one-half mile chase, the defendant was subsequently stopped by an unmarked police car with red flashing lights driven by Detective Reed. The defendant did not attempt to escape, and he did not shoot his gun with three live cartridges in it which was on the front seat of the car.

Wynn testified in his own behalf. Although not admitted in evidence, he proffered the evidence concerning the threats upon his life by Willie Rice. Because of these threats, the bullet holes in Hope's apartment, and information he received on the street, he was scared of Rice and carried the gun in Hope's car. After leaving the apartment, Wynn was aware he was being followed, but had "no idea who it were [sic] at the time." He went to the 7-11 store to try to find out who it was. When he left the store, he was aware of the cars following him. In front of the post office, one of the vehicles pulled in front of him and slammed on the brakes. Wynn stopped behind the vehicle. He saw Jackson exit the passenger's side but did not observe anyone get out of the driver's side. When Jackson approached his vehicle, Wynn picked up the gun and fired three shots, one of which went through the rear door on the passenger's side. He pulled around the vehicle in front of him and fled the scene. He stated that he thought somebody was after him and that it could have been anyone except the police. He testified that he did not intend to shoot anyone and that he shot through the rear door and Jackson was in front of him. He said, "I didn't want to shoot anybody. I just wanted to scare. I wanted to get away." Wynn testified that he was not aware that the persons involved were police officers; that he did not hear Jackson say "police;" and he did not observe Nicely get out of the vehicle and display a badge. Wynn attempted to introduce evidence that he was an excellent marksman to show that he did not intend to shoot Jackson but to scare him. The trial court excluded this testimony.

Wynn also testified that as he was in the process of pulling around the vehicle in front of him, "the man was already out of his car. So I had to go past him. I didn't know if he was trying to shoot me or what . . . . I had balled up in the seat. I thought he was going to shoot me." On cross-examination the Commonwealth's Attorney asked Wynn whether he was he in fear of the people stopping him or whether it was because he had some money on him. In response, Wynn said, "It was for my life."

■ The first issue we deal with is the admissibility of the threats made by Willie Rice within three weeks of the shooting. The question here is one of relevance. "Any fact, however remote, that tends to establish the probability or improbability of a fact in issue is admissible." *Horne v. Milgrim*, 226 Va. 133, 139, 306 S.E.2d 893, 896 (1983). "[W]hile a single circumstance, standing alone, may appear . . . immaterial or irrelevant, it frequently happens that the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." *Peoples v. Commonwealth*, 147 Va. 692, 704, 137 S.E. 603, 606 (1927) (quoting *Karnes v. Commonwealth*, 125 Va. 758, 764, 99 S.E. 562, 564 (1919)). Where the probable prejudice exceeds the probative value of the evidence, the evidence should be excluded. *See Cumbee v. Commonwealth*, 219 Va. 1132, 1138, 254 S.E.2d 112, 116 (1979).

Wynn argues that the evidence of the threats was relevant for several purposes: (1) to prove why he had a gun in his automobile; (2) to prove his mental state and intent at the time of the shooting; and (3) to prove self-defense.

Code § 18.2-57.1 provides:

*Assault and battery against law-enforcement officers; penalty; lesser included offenses.* - If any person commits an assault or an assault and battery against another by the shooting of any pistol, shotgun, rifle or other firearm, knowing or having reason to know that such other person is a law-enforcement officer, as defined hereinafter, engaged in the performance of his public duties as a law-enforcement officer, such person shall be guilty of a Class 1 misdemeanor and, upon conviction, the sentence of such person shall include a mandatory, minimum term of confinement in jail for six months.

The trial court properly instructed the jury upon the Commonwealth's theory of attempted capital murder, the lesser included offense of attempted first degree murder, and the lesser included offense of attempted second degree murder. It then instructed the jury that if the Commonwealth failed to prove beyond a reasonable doubt that the defendant maliciously intended to kill the law enforcement officer, then they should find the defendant not

guilty. The defendant requested that the jury be instructed under Code § 18.2-57.1 on the lesser included offense of assault, but the trial court refused his tendered instructions 15 and 16.

To sustain a conviction for attempted murder, the evidence must establish both a specific intent to kill the victim and an overt but ineffectual act committed in furtherance of the criminal purpose. *Nobles v. Commonwealth*, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977). Certainly, the Commonwealth's evidence was sufficient to prove these elements. However, the defendant's testimony also raises the question whether he had the required intent to kill. If the jury believed his evidence, it could have found him not guilty of attempted murder of a police officer but guilty of assault upon a police officer on the theory that he shot at the officer, not with the intent to kill, but with the intent to scare him. Under the instructions of the court, the jury was precluded from reaching this conclusion but was required to either convict the defendant of attempted murder or acquit him. We find that the trial court committed reversible error when it refused to grant the instruction on assault.

Upon retrial, the admissibility of the evidence as to the threats made by Willie Rice will arise. The intent required to be proven in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged. In determining whether the intent has been proven, the factfinder may consider the conduct of the person involved and all the circumstances revealed by the evidence. The defendant testified that he did not intend to kill anyone but shot only to scare away those following him. The intent in his mind at the time of the shooting is a relevant issue in the case. The evidence of the threats made by Rice to Wynn were admissible for the purpose of showing the mental state and intent of Wynn and should have been admitted in evidence.

Wynn also sought to introduce Rice's threats as part of his plea of self-defense. Self-defense in Virginia is an affirmative defense. The defendant, therefore, assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors. *McGhee v. Commonwealth*, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978). Although the issue of the sufficiency of the evidence to submit the defense of self-defense to the jury will arise upon retrial, we are unable to decide whether,

under the circumstances, the trial court properly refused the self-defense instructions. The decision whether to submit self-defense to the jury must be decided by the trial judge upon the facts and circumstances developed at the new trial.

For the foregoing reasons, we reverse the judgment of the trial court with respect to Wynn's convictions for possession of cocaine and possession of marijuana with intent to distribute and dismiss. We vacate the attempted murder conviction and the firearm conviction and remand to the trial court for a new trial on these charges.

*Reversed and dismissed in part,*
*reversed and remanded in part.*

Barrow, J., and Duff, J., concurred.