## Salem

JERRY RAY BRANDAU

v.

COMMONWEALTH OF VIRGINIA

No. 1204-91-3

Decided May 25, 1993

Counsel

Dale Profitt (Gino W. Williams, on brief), for appellant.

Margaret Ann B. Walker, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**KOONTZ, J.**—Jerry Ray Brandau (Brandau), appellant, was indicted for attempted capital murder of a police officer and use of a firearm in the commission of a felony. In a jury trial, Brandau was convicted of attempted first degree murder and use of a firearm in the commission of a felony. He contends on appeal that the trial court erred in refusing to instruct the jury on the lesser included offense of assault and battery. Finding that the evidence did not support the proffered instruction, we hold that the trial court did not err in refusing the instruction. Accordingly, we affirm.

On June 26, 1990, Brandau and his wife were served an eviction notice for property that Brandau had unsuccessfully attempted to buy. The property was owned by Donald Tolley (Tolley), Brandau's former stepfather, who was divorced from Brandau's mother. On the night Brandau received the eviction notice, a witness heard Brandau through the window threaten to shoot a "deputy" and to "throw the body in the river."

On July 6, 1990, at 10:00 a.m., two deputy sheriffs, Tolley, and two of Tolley's friends went to Brandau's residence to evict him and his wife. The deputies were in uniform and drove marked police cars. Tolley and the two deputies first went to the sliding glass door at the back of the house. A note left on the sliding glass door read: "I am pissed off, don't mess with me." For ten minutes, Deputy Fleet "banged" on the door, called Brandau's name, and announced that they were from the Sheriff's Department. However, Deputy Fleet heard no response.

Deputy Fleet then went to the front door of the residence. He banged on the front door, called Brandau's name, and announced they were from the Sheriff's Department. Hearing no response, Deputy Fleet kicked the front door open. The door opened only six to eight inches because something inside was blocking the entrance. Deputy Fleet yelled through the open door to Brandau that he was from the Sheriff's Department. When Deputy Fleet repeated his effort to push the door open, Brandau began shooting at the door with a semi-automatic rifle. Two bullets hit Deputy Fleet.

There were five bullet holes in the front door and three in the wall next to the door. None of the bullet holes exceeded a five foot range in height. In order to continuously shoot the gun, Brandau had to pull the trigger after each shot.

At the time of the shooting, Brandau and his wife were using the front room of the house as a bedroom; the front door of the residence opened into this room. At trial, Brandau testified that he was sleeping in the front room with his wife the morning of the incident. He testified that he did not hear the police announce themselves because he was asleep and a stereo and fan were running in the room. The evidence showed that Brandau was taking prescribed medication for epileptic seizures that made him groggy and difficult to awaken. Brandau maintained that he did not know who was outside because the windows were covered with cardboard. He testified that his wife awakened him and told him that someone was breaking in, but she did not say who it was. After his wife ran out of the room, Brandau grabbed his rifle and began shooting. Brandau denied threatening Tolley or the police, and further claimed that he did not know he was shooting at a police officer.

On the afternoon of the shooting, the police interviewed Brandau. At that time, Brandau admitted that after he started shooting he heard Deputy Fleet say, "he had been hit." Brandau also admitted that he knew Tolley was outside with the Sheriff's Department before he retrieved his gun, that he heard the police announce themselves, and that he knew Deputy Fleet was outside the door. A recording and transcript of this interview were admitted into evidence without objection.

The trial court instructed the jury on attempted capital murder, attempted first degree murder, and attempted second degree murder. However, the trial court refused Brandau's tendered instruction on assault and battery. That instruction provides: "An assault and battery is

any bodily hurt, however slight, done to another in an angry, rude or vengeful manner."[1]

Brandau contends that the trial court's refusal to instruct the jury on the lesser included offense of assault and battery was erroneous because evidence supported the instruction. Brandau alleges that if the jury believed his testimony, it could have found him guilty of assault and battery on the theory that he shot at the officer with the intent to scare him, but not with the intent to kill him. *See Martin v. Commonwealth*, 13 Va. App. 524, 527, 414 S.E.2d 401, 402 (1992) (en banc) (an intent to kill is a necessary element of attempted capital murder). The Commonwealth, however, contends that the evidence did not support an instruction on assault and battery.

The principles governing our review of a trial court's decision refusing a jury instruction are well-settled. "If any credible evidence in the record supports a proffered instruction on a lesser included offense, failure to give the instruction is reversible error." *Boone v. Commonwealth*, 14 Va. App. 130, 132, 415 S.E.2d 250, 251 (1992). *See Delacruz v. Commonwealth*, 11 Va. App. 335, 338, 398 S.E.2d 103, 105 (1990) (refusal to grant an instruction is reversible error where there is evidence in the record supporting defendant's theory of defense). "Such an instruction, however, must be supported by more than a mere scintilla of evidence." *Boone*, 14 Va. App. at 132, 415 S.E.2d at 251. "[T]he appropriate standard of review requires that we view the evidence with respect to the refused instruction in the light most favorable to [Brandau]." *Id.* at 131, 415 S.E.2d at 251.

The sole issue on appeal is whether more than a scintilla of evidence established that Brandau intended to scare Deputy Fleet, so as to support an instruction on assault and battery. The Virginia appellate courts have not defined the term "scintilla." Although this term has a generally accepted meaning of "a spark" or "the least particle," *see, e.g., Black's Law Dictionary* 1345 (6th ed. 1990), the precise limitations of this term must necessarily be determined in the factual context of a particular case. The determination whether the minimum quantum of credible evidence supports a particular proposition is largely a factor of determining the weight of that evidence in comparison to the weight of the other credible evidence that negates the proposition in

---

[1] Brandau contends on brief that the proper instruction would have been one defining assault and battery of a police officer. However, this distinction has no bearing on our resolution of Brandau's claim.

question. Therefore, an attempt to establish a comprehensive defini-tion of the term scintilla or to draw a brightline limitation of the term is neither practical nor helpful. Rather, the weight of the credible evi-dence that will amount to more than a mere scintilla of evidence is a matter to be resolved on a case-by-case basis. Here, on the facts of this case, we find that the evidence supporting an instruction on assault and battery amounted to no more than a mere scintilla of evidence and, therefore, the refusal of the instruction was proper.

To resolve the issue whether there was more than a mere scintilla of evidence tending to establish that Brandau intended only to scare Deputy Fleet so as to support an instruction on assault and battery, we focus upon Brandau's account of the events in question and view it in the light most favorable to his assertions. In his confession, admitted at trial without objection, Brandau admitted that he heard the police announce themselves and knew that Deputy Fleet was outside the door before he retrieved his gun and began shooting at the door. At trial, Brandau denied giving this statement and gave a different account. He maintained that he did not hear the officers announce their arrival and did not know who was outside the door. Brandau testified:

> I was aroused out of my sleep by my wife. She was, she yelled at me that somebody was breaking in. She run into the bathroom. I run and got, I, I, looked at the door and it was being hit on very hard and it shook the whole side of the house. It . . . scared me extremely. I run and got the gun and I shot through the door try-ing to scare them off.

Brandau further testified that he "continued to pull the trigger until the gun was empty," but he had no idea who was on the other side of the door. He "thought it was somebody trying to come in the house to do bodily harm to me and the wife" because there had been a break-in at Brandau's residence approximately ten months earlier.

Brandau's trial account of the events in question confirms his con-fessional account that he knew a person was outside the door when he shot at the door. His trial account does not dispute the physical evi-dence that the bullet holes in the door did not exceed a five foot range in height and, thus, were positioned to strike a person of average height standing on the outside of the door and hitting on it. In this factual context, Brandau's assertion that he merely intended to scare that person, rather than to kill him, comes into proper focus.

■ " 'Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case.' " *David v. Commonwealth*, 2 Va. App. 1, 3, 340 S.E.2d 576, 577 (1986) (quoting *Ridley v. Commonwealth*, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979)). Brandau's trial testimony regarding his intent in shooting at the door is the only evidence supporting his theory that his intent was to scare rather than to kill an intruder. Such testimony may amount to more than a scintilla of evidence when viewed in a vacuum, but it pales to no more than a scintilla when viewed in light of the other undisputed evidence at trial. The physical evidence showing the number of shots and the positioning of the bullet holes in the door coupled with Brandau's admission that he knew a person was outside the door negates a mere intent to scare that person. In addition, Brandau's confession that he knew the person at the door was a police officer, rather than an unlawful intruder, significantly reduces the credibility of his trial assertion that he intended merely to scare that person. The favorable inferences drawn from these facts and circumstances do not amount to more than a scintilla of evidence showing an intent to scare. Thus, there is no evidence, rising above a scintilla, to support Brandau's theory that he intended to scare the officer.

Moreover, Brandau's theory that he fired in self-defense, believing that the intruder was breaking in to "do bodily harm," is of no consequence to our resolution of this issue. The court instructed the jury on the doctrine of self-defense and, consequently, the self-defense issue was before the jury.

Brandau contends that this case is similar to *Wynn v. Commonwealth*, 5 Va. App. 283, 362 S.E.2d 193 (1987). In *Wynn*, the defendant was charged with attempted capital murder of a police officer. The trial court instructed the jury upon the Commonwealth's theory of attempted capital murder, attempted first degree murder and attempted second degree murder, but refused Wynn's proffered instruction on assault. Wynn had been followed at night by police officers driving unmarked cars. Wynn testified that he did not know his pursuers were police officers. One of the unmarked cars pulled in front of Wynn's vehicle and slammed on its brakes; Wynn stopped behind this car. One of the officers approached Wynn's car and identified himself as a police officer. Wynn, who did not hear the officer identify himself, fired three shots in a direction away from the officer

and fled. When Wynn was ultimately apprehended, three live cartridges, which had not been shot, were left in the gun. Wynn maintained that he did not intend to kill anyone, but shot only to scare away those following him. We held that the trial court erred in refusing to grant the assault instruction because Wynn's evidence showed that he intended to scare the police officer. *Id.* at 292, 362 S.E.2d at 198.

*Wynn* is distinguishable from the present case. The evidence in *Wynn*, when viewed in the light most favorable to Wynn, showed that Wynn *shot in a direction away from the police officer* and did not fire all of his ammunition. By comparison, the evidence here showed that Brandau fired all of his ammunition in the direction of Deputy Fleet. Although Brandau contends that, like Wynn, he did not know that the intruder was an officer, the fact that he fired all of his ammunition in the direction of the point of entry distinguishes this case from the facts of *Wynn*.

Moreover, our holding here is consistent with our recent decision in *Martin v. Commonwealth*, 13 Va. App. 524, 414 S.E.2d 401 (1992) (en banc). In *Martin*, the trial court refused to instruct the jury on assault where the defendant was charged with attempted capital murder. The evidence showed that Martin was stopped and frisked by a police officer. When the officer advised Martin that he was under arrest, Martin hit him and fled. The officer chased Martin around a van and, when Martin appeared, he swung a large knife at the officer. Martin said, "Come on, get some of this shit. I'm going to kill you." The knife passed immediately under the officer's chin and the officer fell backward against the van. As Martin swung the knife a second time, the officer was trying to release his gun from his holster. At that time, Martin was standing two to three feet from the officer. He fled again.

We stated that although the jury could infer the element of intent to kill from the evidence, "[t]he evidence . . . is also reasonably susceptible to the interpretation that Martin's words and feints with the knife were intended to intimidate and immobilize [the officer] in order to enable Martin to escape." *Id.* at 527, 414 S.E.2d at 402. However, a similar conclusion, that Brandau's actions were intended to intimidate or scare the intruder, cannot be drawn from the evidence here. Although Martin's placement of the weapon supported his theory that he never intended to kill the officer, Brandau fired all of his ammunition in the direction of the point of entry. There was nothing about Brandau's actions that evinced only an intent to scare. Once fired, the bullets striking Officer Fleet were beyond Brandau's control.

Viewing all the evidence in the light most favorable to Brandau, we conclude that the evidence supporting Brandau's proffered instruction on assault and battery amounted to no more than a scintilla of evidence. Accordingly, we affirm Brandau's convictions for attempted first degree murder and use of a firearm in the commission of a felony.

*Affirmed.*

Moon, C.J., and Bray, J., concurred.