COURT OF APPEALS OF VIRGINIA

Present:  Judges Coleman, Willis and Senior Judge Hodges
Argued at Salem, Virginia

FREDDIE EUGENE CASEY, a/k/a
 FREDDIE EUGENE OSBORNE

v.      Record No. 1326-94-3       MEMORANDUM OPINION[*] BY
                                   JUDGE WILLIAM H. HODGES
COMMONWEALTH OF VIRGINIA                 JULY 25, 1995

FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Donald R. Mullins, Judge

Daniel R. Bieger, (Copeland, Molinary &
Bieger, P.C. on brief), for appellant.

Kathleen B. Martin, Assistant Attorney
General (James S. Gilmore, III, Attorney
General, on brief), for appellee.


Freddie Eugene Casey (appellant) was convicted of first degree murder.  On appeal, appellant contends that the trial court erred in refusing to instruct the jury on second degree murder because the testimony of two witnesses for the prosecution supported such an instruction.  We disagree and affirm the judgment of the trial court.

I.

On January 23, 1991, the decomposed body of Troy Lee Stanford (Stanford) was discovered, covered with underbrush, a tire, and a leather jacket, in the woods in Russell County.  At the autopsy, the medical examiner counted 117 stab wounds to the body and noted that several of the stab wounds had punctured

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

internal organs.  The medical examiner determined the cause of death to be "very massive, rapid internal bleeding," and estimated that Stanford had been dead "anywhere from a week to three or four months."

Keith Stanford, the victim's brother, testified that he last saw Stanford alive on December 13, 1990.  On that day, the brothers gave a ride to appellant, and appellant had borrowed twenty dollars from Stanford.  Samuel Goodman saw Stanford alive between 5:00 and 6:00 p.m. on December 14, 1990.

Darrell Crabtree testified that he went to Brian Rowe's trailer on Daw Road around 1:00 a.m. on December 15, 1990.  Bobby Shortridge opened the trailer door, but told him to come back later.  Crabtree, however, pushed his way into the trailer and heard Barbie Clendenin crying.  He saw another woman washing blood from the trailer walls and the kitchen table.  When Crabtree asked what was going on, appellant said, "I killed the son of a bitch."  Crabtree asked "who," to which appellant replied, "that narcing son of a bitching Troy Stanford."  Crabtree did not see a body.  As Crabtree was leaving the trailer, appellant and Brian Rowe told him that he "didn't see nothing," and told him not to tell anyone.  Later, while incarcerated in the Russell County jail, Crabtree saw appellant again and appellant insisted that he not say anything about the killing.

Appellant told Ricky Fletcher and Yvonne Lester that he had

-2-

cut someone on Daw Road because he had a habit to support. Later, while in the Bristol jail, appellant told Fletcher that he had stolen $350 to $400 from the man he killed. William Lester testified that, while in the Bristol jail, appellant told other inmates that he stabbed Stanford in the chest several times. Appellant said that Stanford had been lured to the trailer and appellant had "killed the snitching bastard."

Richard Hurt and Robert Hill also testified in the Commonwealth's case in chief. Hurt stated that he had talked to appellant in the Russell County jail about the murder. Appellant told Hurt that Stanford had come to the trailer to collect some money that appellant owed him, and "an argument broke out." Appellant said he stabbed Stanford and, when he stabbed him, he did not want to quit. It was only the screaming of others in the trailer that brought appellant back to his "attention." Appellant told Hurt that watching someone take his last breath was "real excitement." Appellant also told Hurt that he required everyone at the trailer to cut the body at least one time so that no one would tell what happened.

Robert Hill testified that, while in the Tazewell County jail, appellant showed him a "forensic picture" of Stanford's body, showing the stab wounds. Appellant told Hill that he had borrowed money from Stanford and, when Stanford came to collect it, appellant did not have the money. Appellant said they had an argument, a knife was pulled, and there was a struggle.

Appellant said he "just kept stabbing him," and then he and Brian Rowe took the body to the woods and covered it with brush and tires.

Several witnesses testified for the defense that appellant was not present at Brian Rowe's trailer on the evening of December 14 and early morning of December 15, 1990. Other witnesses testified as to appellant's whereabouts at that time. Appellant testified that he did not kill Stanford and had no knowledge of how Stanford was killed. Appellant claimed that the witnesses for the prosecution were lying and were receiving some benefit from the Commonwealth for their false testimony.

Appellant tendered jury instructions which included a finding of second degree murder. The Commonwealth objected to the instructions and the court refused them.

## II.

Appellant's theory at trial was that he was not responsible for Stanford's death and was not present at Rowe's trailer the night of December 14 through the morning of December 15. However, he contends on appeal, as he did at trial, that he was entitled to a second degree murder instruction because Commonwealth witnesses Hurt and Hill testified that he said he and Stanford argued before he stabbed him, and Hill stated that he said there was a struggle.[1]

_____

[1]On brief, appellant also argues that the presence of 117 stab wounds "provides a credible basis for an inference that the stabbing was committed insanely, or in a heat of passion, and not as a result of a premeditated act." Appellant, however, did not

Although the Commonwealth prevailed in the trial court, we must review the evidence relevant to appellant's refused instructions in the light most favorable to him.  Martin v. Commonwealth, 13 Va. App. 524, 526, 414 S.E.2d 401, 401 (1992) (en banc) (citing Blondel v. Hays, 241 Va. 467, 469, 403 S.E.2d 340, 341 (1991)).  Moreover, it has long been established that a jury need not accept "in toto" the theory of the Commonwealth or the defendant, but may reject parts of the evidence it believes to be untrue and accept the parts it believes to be true.  Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958).

An accused, however, "is entitled to have the jury instructed only on those theories of the case that are supported by evidence."  Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986).  Evidence asserted in support of a lesser included instruction "'must amount to more than a scintilla.'"  Buchanan v. Commonwealth, 238 Va. 389, 409, 384 S.E.2d 757, 769 (1989), cert. denied, 493 U.S. 1063 (1990) (citations omitted).  See Brandau v. Commonwealth, 16 Va. App. 408, 411, 430 S.E.2d 563, 564–65 (1993).

If the jury based its verdict only on the evidence of Hill and/or Hurt, the evidence does not require the giving of an instruction on second degree murder.

---

make this argument to the trial court and we will not consider it for the first time on appeal.  See Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (citing Rule 5A:18).

Neither witness testified that appellant claimed that he was provoked into killing Stanford, or that he did not intend to kill Stanford when he stabbed him. "A design to kill may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill." Giarratano v. Commonwealth, 220 Va. 1064, 1074, 266 S.E.2d 94, 100 (1980).

The fact that a killer and his victim argue prior to the murder does not, of itself, mandate that a second degree murder instruction be given. See Buchanan, 238 Va. at 409-12, 384 S.E.2d at 769-71. Nor does testimony that there was a struggle, without more, provide more than a scintilla of evidence that the accused lacked premeditation. The evidence on which appellant relies falls short of establishing "provocation, anger, passion, or any other fact that might serve to convince a jury that [he] acted without premeditation." Id. at 412, 384 S.E.2d at 771. Thus, the trial court did not err in refusing to instruct the jury on second degree murder. The judgment of the trial court is affirmed.

Affirmed.