Tuesday                18th

December, 2001.


Ernest William Ramsey,                                    Appellant,

against        Record No. 1113-00-2
               Circuit Court No. CR98-6993

Commonwealth of Virginia,                                  Appellee.


Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
Bray, Annunziata, Bumgardner, Frank, Humphreys, Clements and
Agee


Andrew E. Weaver for appellant.

Donald E. Jeffrey, III, Assistant
Attorney General (Randolph A. Beales,
Attorney General, on brief), for
appellee.


Upon a rehearing en banc, the stay of this Court's
July 10, 2001 mandate is lifted, and the judgment of the trial
court is affirmed in accordance with the majority memorandum
opinion of a panel of this Court in Ramsey v. Commonwealth,
Record No. 1113-00-2 (Va. Ct. App. July 10, 2001).

Judge Benton dissents for those reasons expressed in
the dissenting opinion of the panel.

It is ordered that the trial court allow counsel for
the appellant an additional fee of $200 for services rendered

the appellant on the rehearing portion of this appeal, in addition to counsel's costs and necessary direct out-of-pocket expenses.  This amount shall be added to the costs due the Commonwealth in the July 10, 2001 mandate.

This order shall be certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

-2-

                                        Monday            10th
        September, 2001.


Ernest William Ramsey,                                Appellant,

  against      Record No. 1113-00-2
              Circuit Court No. CR98-6993

Commonwealth of Virginia,                             Appellee.


                Upon a Petition for Rehearing En Banc

                     Before the Full Court


        On July 24, 2001 came Ernest William Ramsey, by

court-appointed counsel, and filed a petition praying that the

Court set aside the judgment rendered herein on July 10, 2001,

and grant a rehearing en banc thereof.

        On consideration whereof, the petition for rehearing

en banc is granted, the mandate entered herein on July 10, 2001

is stayed pending the decision of the Court en banc, and the

appeal is reinstated on the docket of this Court.

        The parties shall file briefs in compliance with Rule

5A:35. The appellant shall attach as an addendum to the opening

brief upon rehearing en banc a copy of the opinion previously

rendered by the Court in this matter.  It is further ordered

that the appellant shall file with the clerk of this Court

                            -3-

twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Present:  Judges Benton, Frank and Clements
Argued at Richmond, Virginia


ERNEST WILLIAM RAMSEY

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1113-00-2      JUDGE ROBERT P. FRANK
                                         JULY 10, 2001
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
                  Robert G. O'Hara, Jr., Judge

           Andrew E. Weaver for appellant.

           Donald E. Jeffrey, III, Assistant Attorney
           General (Mark L. Earley, Attorney General, on
           brief), for appellee.


     At a trial on an indictment for the first degree murder of J.D.

Stephens, a jury convicted Ernest William Ramsey (appellant) of murder

in the second degree, in violation of Code § 18.2-32.  On appeal,

Ramsey contends the trial judge erred in refusing to instruct the jury

on voluntary manslaughter.  Finding no error, we affirm the conviction.

                          I.  BACKGROUND

     "'In determining whether to instruct the jury on a lesser-included

offense, the evidence must be viewed in the light most favorable to the

accused's theory of the case.'"  Hunt v. Commonwealth, 25 Va. App. 395,

400, 488 S.E.2d 672, 674 (1997) (quoting Lea v. Commonwealth, 16 Va.

App. 300, 305, 429 S.E.2d 477, 480 (1993)).

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

At trial, the evidence proved that when appellant called his friend, Angel Sanchez, he spoke with J.D. Stephens, who lived at the Sanchez home. Later that afternoon, Sanchez arrived at appellant's apartment to pick him up. Sanchez told appellant he needed to get some money from his mother. Sanchez testified that appellant said "[Stephens] needed to stop talking so much shit and that if he didn't somebody was going to hurt him or kill him." Sanchez testified that although appellant "seemed mad at [Stephens]," appellant was agitated mostly because of the delay and said he did not want to be late.

When they arrived at Sanchez's mother's home, Sanchez went inside and appellant waited in the car. Stephens, who had been drinking alcohol, was sitting in the living room holding a baseball bat. After ten or fifteen minutes, appellant entered the house because Sanchez "took too long." When Sanchez came into the living room, he noticed that Stephens and appellant were "having words." According to Sanchez, appellant was "standing over top [Stephens]," telling Stephens that he "needed to quit talking so much shit." Stephens told appellant "to get out, get out of his house" and was still holding the baseball bat. Sanchez testified that he told appellant, "Come on, let's go, leave him alone." Sanchez then walked outside with his mother.

Sanchez and his mother walked across the driveway and were standing on a neighbor's porch. They had been on the neighbor's porch for less than five minutes when Sanchez heard "a slam, a loud bang." Sanchez characterized the noise as appellant's back hitting their screen door. Sanchez testified that he saw appellant open the screen

-6-

door, walk backwards off the porch, and walk away. Stephens then emerged from the house with one hand over his chest and the other holding the baseball bat. Stephens said, "Call the law, he got me, he got me." The medical examiner's report indicated Stephens died of a single stab wound in his left chest area.

Sanchez testified that Stephens had mood swings when he was drinking and could be mean and violent. He testified, "You just had to know when [Stephens] was in a mood where you had to leave him alone and when you could talk to him." He had previously seen Stephens "threaten[ing] with a bat, but he never hit anybody with it."

Appellant testified he went into the house because Sanchez "took so long coming back." He testified that he was not agitated from the telephone conversation and did not start the argument with Stephens. However, he told Stephens that he "should stop talking so much shit on the telephone to people that you don't know nothing about." He testified that after Sanchez and his mother went out the door, he turned to follow them. Stephens then hit him from behind with the baseball bat. After Stephens hit him on the back and shoulder with the bat, Stephens hit him a second time across the shoulder. As Stephens again "was coming down . . . with the baseball bat," appellant retrieved his knife and opened it. Appellant testified that he held the knife, intending to frighten Stephens away with it, and that Stephens ran into the blade. Appellant testified that he had not had any fights or difficulty with Stephens until that day and that he had the knife because he used it in his work.

-7-

Appellant testified that he walked to a nearby store, where he asked Sam Brown, a captain with the sheriff's office, to call the police because he had stabbed someone. After appellant gave a statement at the police station, the police took him to the hospital because he indicated that his shoulder was hurting. The treating doctor testified that appellant had a contusion of the right shoulder and that the injury could have been caused by a blunt object such as a baseball bat. He proscribed medication and a sling to hold the arm.

A toxicologist testified that Stephens had a blood-alcohol level of .22% by weight by volume at the time of his death. The toxicologist also testified that as a person's blood alcohol level increases to .1, the person becomes more careless, more talkative, less inhibited, and more euphoric.

After the evidence was presented at trial, appellant's counsel submitted a jury instruction on voluntary manslaughter, contending the killing was done during mutual combat. The trial judge refused the instruction, citing the fact that appellant never testified he stabbed Stephens in the heat of passion or in mutual combat.[1] The jury convicted appellant of second degree murder and recommended a sentence of twenty years in prison. This appeal followed.

## II. ANALYSIS

---

[1] The jury was instructed on accidental killing and self-defense as well as first and second degree murder.

Appellant contends that the trial court erred in not granting a voluntary manslaughter instruction because there was evidence of "mutual combat" and "heat of passion."

The Commonwealth argues that because the record does not contain the refused instruction, nor did appellant orally proffer the instruction, this appeal is procedurally defaulted under Rule 5A:18, citing Marsh v. Commonwealth, 32 Va. App. 669, 680, 530 S.E.2d 425, 430-431 (2000). We disagree that appellant's appeal is procedurally defaulted.

Although Rule 5A:7(a)(2) states that the record on appeal from the trial court must include "each instruction marked 'given' or 'refused' and initialed by the judge," the record in this case contains no explanation why the trial judge did not make those refused instructions a part of this record.

Rule 5A:18 states:

> No ruling of the trial court or the Virginia Workers' Compensation Commission will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to constitute a question to be ruled upon on appeal.

"The purpose of the rule is to allow the trial court to cure any error called to its attention, thereby avoiding unnecessary appeals and retrials." Herring v. Herring, 33 Va. App. 281, 286, 532 S.E.2d 923, 926 (2000) (citation omitted).

The colloquy between defense counsel and the trial judge adequately satisfied the purpose of Rule 5A:18.  The trial judge knew of the instruction and had the issues and arguments before him so that he could make an informed decision.  The lack of the precise written instruction in the record before us does not endanger judicial efficiency, nor does it create a situation where the rationale of Rule 5A:18 applies.  The trial judge had the instruction before him and knew appellant's reasons for offering the instruction.

> "[T]he trial court should instruct the jury only on those theories of the case which find support in the evidence."  Morse v. Commonwealth, 17 Va. App. 627, 632-33, 440 S.E.2d 145, 149 (1994).  "'If any credible evidence in the record supports a proffered instruction on a lesser included offense, failure to give the instruction is reversible error.'  'Such an instruction, however, must be supported by more than a mere scintilla of evidence.'"  Brandau v. Commonwealth, 16 Va. App. 408, 411, 430 S.E.2d 563, 564 (1993) (citations omitted).  "[T]he weight of the credible evidence that will amount to more than a mere scintilla of evidence is a matter to be resolved on a case-by-case basis."  Id. at 412, 430 S.E.2d at 565.

Goodson v. Commonwealth, 22 Va. App. 61, 78, 467 S.E.2d 848, 857 (1996).

Voluntary manslaughter is the unlawful killing of another without malice, actual or implied, upon a sudden heat, reasonable provocation, or in mutual combat.  See Moxley v. Commonwealth, 195 Va. 151, 157, 77 S.E.2d 389, 393 (1953) (quoting Read v. Commonwealth, 63 Va. (22 Gratt.) 924, 937-38 (1872)).

In this case, because appellant did not argue "heat of passion" as the basis for the voluntary manslaughter instruction and only relied on

"mutual combat," we only address "mutual combat." [2]  Therefore, the issue of "heat of passion" is procedurally defaulted under Rule 5A:18, and we find nothing in the record to invoke the good cause or ends of justice exceptions.

> For combat to be "mutual," it must have been voluntarily and mutually entered into by both or all parties to the affray.  See Smith [v. Commonwealth], 17 Va. App. [68,] 72, 435 S.E.2d [414,] 417 [(1993)].  It is settled that "[o]ne who is assaulted may and usually does defend himself, but the ensuing struggle cannot be accurately described as mutual combat."  Harper v. Commonwealth, 165 Va. 816, 820, 183 S.E. 171, 173 (1936).

Lynn v. Commonwealth, 27 Va. App. 336, 356, 499 S.E.2d 1, 10 (1998), aff'd, 257 Va. 239, 514 S.E.2d 147 (1999).

"[J]ury instructions are proper only if supported by the evidence, and . . . more than a scintilla of evidence is necessary to support a lesser-included offense instruction requested by the defendant."  Commonwealth v. Donkor, 256 Va. 443, 445, 507 S.E.2d 75, 76 (1998).

In this case, we hold there was not a scintilla of evidence that there was "mutual combat" between appellant and Stephens.  The only testimony concerning the actual assault was from appellant.  While there was other testimony that appellant and the victim "were having words" inside the house, there is no testimony of an affray or any assaultive behavior until appellant proceeded to leave the house, backing away from the victim.

---

[2] Appellant limited his argument on brief to "mutual combat."  See Rule 5A:20.

Appellant admitted that there was an argument and told Stephens he "should stop talking so much shit on the telephone . . . ."  However, the evidence established there was no physical altercation until appellant began walking to the door.  Then, Stephens struck appellant from behind with the baseball bat.  Stephens approached appellant again with the baseball bat and hit him on the shoulder.  At that time, appellant pulled out his knife and the victim "ran into the blade."

The evidence does not support an inference by the jury that appellant entered the altercation voluntarily.  At most, appellant pulled out his knife after twice being attacked by Stephens.  The ensuing struggle cannot be correctly described as "mutual combat."

For these reasons, we find no error.  Therefore, we affirm the judgment of the trial court.

Affirmed.

Benton, J., dissenting.

For the reasons that follow, I would reverse the second degree murder conviction and remand for a new trial.

I.

Principles governing the giving of jury instructions are well established in Virginia. "It is reversible error for the trial [judge] to refuse to instruct the jury on the lesser offenses charged in the indictment if there is any evidence in the record tending to prove such lesser offenses." Taylor v. Commonwealth, 186 Va. 587, 591, 43 S.E.2d 906, 908 (1947). See also Delacruz v. Commonwealth, 11 Va. App. 335, 338, 398 S.E.2d 103, 105 (1990). Moreover, when the evidence in the record tends to sustain both the Commonwealth's and the accused's theory of the case, the trial judge is required to give the jury requested instructions on both theories. Jackson v. Commonwealth, 96 Va. 107, 114, 30 S.E. 452, 454 (1898). See also Diffendal v. Commonwealth, 8 Va. App. 417, 422, 382 S.E.2d 24, 26 (1989). When instructing the jury, the trial judge must be guided by the following principle:

> The jury is not required to accept, in toto, either the theory of the Commonwealth or that of an accused. They have the right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true. In so doing, they have broad discretion in applying the law to the facts and in fixing the degree of guilt, if any, of a person charged with a crime.

-14-

Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958). See also Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986).

The principles governing the elements of manslaughter, a common law offense in Virginia, King v. Commonwealth, 217 Va. 601, 605-06, 231 S.E.2d 312, 316 (1977), are equally well established.

> Every malicious homicide is murder. Manslaughter, on the other hand, is the unlawful killing of another without malice.  To reduce a homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon reasonable provocation.
> Heat of passion is determined by the nature and degree of the provocation and may be founded upon rage, fear, or a combination of both.

Barrett, 231 Va. at 105-06, 341 S.E.2d at 192 (citations omitted).

Thus, the long standing rule in Virginia is as follows:

> "It has been long settled that where a homicide is committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation, it is not murder, but is manslaughter only -- voluntary manslaughter, if there be no further justification, and involuntary manslaughter if the killing be done in the commission of some lawful act, such as in justifiable self-defense."

Wilkins v. Commonwealth, 176 Va. 580, 583, 11 S.E.2d 653, 654 (1940) (citation omitted).

Applying these principles, Virginia cases have held that "[w]hen a homicide is committed in the course of a sudden quarrel or broil, or mutual combat, or upon sudden provocation, and without any previous grudge, the offence may be murder or manslaughter, according to the circumstances of the case."  Read v. Commonwealth, 63 Va. (22

Gratt.) 924, 937-38 (1872).  Thus, "[i]t is perfectly true that where homicide occurs in the course of a sudden quarrel, mutual combat, or upon sudden provocation, and the killing is from passion growing solely out of the provocation, the offense is manslaughter and not murder."  Ballard v. Commonwealth, 156 Va. 980, 993, 159 S.E. 222, 226 (1931).  Likewise, evidence of "passion brought on by an unlawful assault may reduce the homicide to manslaughter."  Moxley v. Commonwealth, 195 Va. 151, 158, 77 S.E.2d 389, 393 (1953).  "If, upon being assaulted, the passion of the assaulted person become greatly excited, and under that impulse he kill his assailant, though it be with a deadly weapon, the offence is manslaughter only."  Briggs v. Commonwealth, 82 Va. 554, 565 (1886).

II.

When we apply familiar appellate principles and view this evidence "in the light most favorable to the proponent of the refused instruction, the defendant in this case," Commonwealth v. Alexander, 260 Va. 238, 240, 531 S.E.2d 567, 568 (2000), it is manifest that the trial judge erred in refusing to instruct the jury on voluntary manslaughter.  The inferences that flow from the proved facts in this case do not solely favor the Commonwealth's theory that this was a malicious killing.  The trial judge failed, however, to instruct the jury that if it found malice was not proved, it could find Ramsey guilty of the lesser offense of manslaughter.

The evidence contained sufficient proof of a sudden quarrel or mutual combat or sudden provocation to explain the killing.  See

-16-

McClung v. Commonwealth, 215 Va. 654, 212 S.E.2d 290 (1975); Brown v. Commonwealth, 138 Va. 807, 122 S.E. 421 (1924).  The jury could have found that Ramsey and Stephens quarreled in Stephens' living room as Ramsey waited for Sanchez, that the quarrel led to an affray in which Stephens assaulted Ramsey with a baseball bat, and that during the affray Ramsey used the knife to defend himself from the attack.

The majority opinion concludes that heat of passion is procedurally defaulted in this case.  I disagree.  Ramsey's attorney agrees that his theory of defense was mutual combat and that this is the issue he raised in the trial court.  He contends, however, that mutual combat and heat of passion are intertwined when there is mutual combat.  This is precisely the teaching of Wilkins.  The Supreme Court ruled more than sixty years ago that "[i]t has been long settled that where a homicide is committed in the course of a sudden quarrel, or mutual combat . . . and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat . . . , it is . . . manslaughter only."  176 Va. at 583, 11 S.E.2d at 654 (emphasis added).  Accord Briggs, 82 Va. at 565.  A quarrel or combat is the triggering event that forms the basis for the instruction.  Heat of passion is a state of mind.  When they converge, the mens rea that signifies murder does not exist.  Thus, I would "conclude . . . that a jury reasonably could find from the evidence that [Ramsey] did not act maliciously, but acted upon a reasonable provocation, in the heat of passion induced by fear" or

-17-

rage that grew from the quarrel or combat.  <u>Barrett</u>, 231 Va. at 107, 341 S.E.2d at 193.

The trial judge was not oblivious to this issue.  In the discussion concerning the instruction, he warned as follows:

> THE [JUDGE]:  Through the Commonwealth's evidence, they introduce the fact that -- they can believe part of your evidence as well as part of the defense's evidence.  They don't have to accept everything you say and everything that the defense says.  They could find in part, I believe.  I may not agree with it, but I think they could take part of the Commonwealth's case to find, for instance, that his statement made to the young man with him there, that [Stephens] is (inaudible) and something's going to happen to him and that he went into the house and once in there it developed what may be perceived as a mutual affray because he was an aggressor.  I'm just cautioning you on what I believe to be the logic on some of those cases from the Supreme Court and Court of Appeals has sent cases back when courts have failed to instruct on sometimes mixed theories or theories that can come to light or the reasonable in the mind of the trier of fact of mixed evidence.

In <u>McClung</u>, the defendant could not testify at all about the death of the victim, and there were no other eyewitnesses.  215 Va. at 655, 212 S.E.2d at 291.  Because the victim abused her, however, the Supreme Court of Virginia decided that "the jury could have concluded that [the victim's] conduct under these circumstances was sufficient to provoke a reasonable person to fear or rage, or both."  <u>Id.</u> at 656-57, 212 S.E.2d at 292.

Similarly, in this case, the jury could have believed Ramsey's testimony about Stephens' attack and could have found that Ramsey was calm when he entered the house, engaged in a quarrel with Stephens, and, while motivated by fear or rage, killed Stephens during the

-18-

fray.  When, as here, the record as a whole "produces some credible evidence that [the accused] acted in the heat of passion, he is entitled to an instruction on manslaughter."  Hodge v. Commonwealth, 217 Va. 338, 345, 228 S.E.2d 692, 697 (1976).  The facts and inferences that flow from the evidence in the record were for the jury to consider.  "The determination of whether a killing is committed in pursuit of a continuing animus or upon reasonable provocation or whether it was accomplished maliciously or in the heat of passion is a jury question."  Turner v. Commonwealth, 23 Va. App. 270, 275, 476 S.E.2d 504, 507 (1996).

I believe that sufficient evidence was proved at trial that, "[h]ad the jury been instructed in the definition of voluntary manslaughter, they could have found that the homicide met that definition."  McClung, 215 Va. at 657, 212 S.E.2d at 293.  "A jury verdict in the absence of an instruction which should have been granted provides no insight into what the jury might have done had it been properly instructed."  Boris v. Hill, 237 Va. 160, 165, 375 S.E.2d 716, 719 (1989).  Thus, the finding of murder is not controlling when the jury was not instructed on the elements that would have allowed a finding of homicide that did not depend on the existence of malice.  It bears repeating that "[a] plea of self-defense and a claim of provoked heat of passion do not conflict with each other," Barrett, 231 Va. at 106, 341 S.E.2d at 192, and that a "killing [resulting] from the sudden heat of passion growing . . .

out of the quarrel, or combat . . . is manslaughter."  _Wilkins_, 176 Va. at 583, 11 S.E.2d at 654.

For these reasons, I would reverse the conviction and remand for a new trial.