COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Elder and Bumgardner
Argued at Richmond, Virginia


EDWARD WAYNE BEVERLY

MEMORANDUM OPINION[*] BY

v.    Record No. 0852-98-2         JUDGE LARRY G. ELDER
                                       JUNE 29, 1999

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ORANGE COUNTY
Lloyd C. Sullenberger, Judge

Roy D. Bradley (Bradley Law Firm, P.C., on
briefs), for appellant.

Eugene Murphy, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Edward Wayne Beverly (appellant) appeals from his jury

trial convictions for abduction with intent to defile, forcible

sodomy and first-degree murder.  On appeal, he contends the

trial court erroneously (1) admitted DNA evidence in violation

of Code § 19.2-270.5; (2) excluded blood typing evidence;

(3) refused to appoint a handwriting expert and a fingerprint

expert to aid appellant's defense; and (4) admitted without

proper foundation Commonwealth's exhibits 2 through 9--a road

atlas and other documents allegedly found by a witness who had

died prior to trial.  For the reasons that follow, we hold that

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

the trial court committed no reversible error, and we affirm appellant's convictions.

1.  ADMISSIBILITY OF DNA EVIDENCE UNDER CODE § 19.2-270.5

Appellant objects to the admission of the DNA tests for which notice was filed on February 13, 1998 (the second DNA notice), on the ground that no probability report accompanied the December 1, 1997 certificate of analysis as required by Code § 19.2-270.5.[1]  He objects to admission of the DNA test for which notice was filed on February 17, 1998 (the third DNA notice), on the ground that the notice was filed less than twenty-one days prior to trial and that no probability report accompanied the certificate of analysis.  We reject both contentions.

The second DNA notice states specifically that "the Commonwealth has attached the following written profiles, reports, or statements concerning [the DNA evidence sought to be admitted] to the copy of this notice sent to counsel for

_____

[1] On brief, appellant objected to the absence of a "profile" rather than a "probability report."  However, his description of what he sought makes clear his objection was to the absence of evidence of the random-match probability, which we refer to herein as a probability calculation or probability report.  See National Research Council, The Evaluation of Forensic DNA Evidence 2, 12-14, 25, 29-31, 217 (1996); see also Code § 19.2-310.2 (in statute requiring certain convicted felons to provide samples for DNA analysis, referring to "[DNA] analysis to determine identification characteristics specific to the person" as "the profile").  A probability calculation or probability report indicating the "statistical probability of a DNA match" constitutes a profile, report or statement within the meaning of Code § 19.2-270.5.  See Caprio v. Commonwealth, 254 Va. 507, 512, 493 S.E.2d 371, 373-74 (1997).

-

[appellant]: . . . Division of Forensic Science Certificate of Analysis dated December 1, 1997, F.S. Lab No N89-09248." The complete December 1, 1997 certificate of analysis, including page 4's probability analysis, was provided to appellant on February 6, 1998, as part of the Commonwealth's supplemental answer to appellant's discovery. Code § 19.2-270.5 does not require that copies of the profiles, statements or reports to be introduced must be attached to the notice; it requires only that they be "provide[d] or [made] available." Because it is undisputed that the Commonwealth made available the probability calculations contained in the December 1, 1997 certificate of analysis in a timely fashion, the requirements of the statute were met, and the trial court did not err in admitting the certificate into evidence.

The court also did not err in admitting into evidence the certificate named in the third DNA notice. That notice listed only the FBI report dated July 22, 1993, a two-page report which the Commonwealth previously timely had provided as an attachment to both its first and second DNA notices. Because the report had already been timely filed under Code § 19.2-270.5, the Commonwealth was not required to file it again. Therefore, the Commonwealth's filing of the third DNA notice less than twenty-one days before trial was irrelevant to the report's admissibility.

-

We also reject appellant's argument that the July 22, 1993 report was inadmissible because it was not accompanied by a statistical probability analysis.  That report was a two-page analysis excluding Thomas Kidd as a potential contributor to the DNA detected in the sperm fraction of the anal swabs taken from the victim.  Where a suspect is excluded as a contributor, the likelihood that a particular suspect was the contributor of the sample found is zero, and no probability calculation is necessary.  See National Research Council, The Evaluation of Forensic DNA Evidence 51 (1996).

For these reasons, we hold that the trial court did not abuse its discretion in admitting the challenged DNA evidence.

## 2.  EXCLUSION OF BLOOD TYPING EVIDENCE

Appellant contends that blood typing results produced by Nancy Avery indicating his blood is Type A when, in reality, appellant's blood is Type O, show that the blood was tampered with or inadvertently switched.  He argues that the trial court abused its discretion in excluding this exculpatory evidence while simultaneously admitting DNA evidence resulting from tests performed on the same blood sample.  Again, we disagree.

We hold first that appellant may not object on appeal to the admission of the DNA evidence due to alleged tampering with the sample.  Appellant moved to suppress the DNA evidence on this ground prior to trial, but during argument on that motion, appellant withdrew his motion to suppress.  Therefore, appellant

-

did not preserve this issue for appeal, see Rule 5A:18, and we consider only whether the court erroneously excluded the results of Avery's blood typing test indicating that the blood tested was Type A.

Second, we hold that the expert testimony regarding the reliability of Avery's typing test on the dried blood removed from the stoppers was conflicting at best and justified exclusion of the blood type evidence. See Spencer v. Commonwealth, 240 Va. 78, 97-98, 393 S.E.2d 609, 621 (1990) (holding that when scientific evidence is offered, "the court must make a threshold finding of fact with respect to the reliability of the scientific method offered" and that "[if there is a conflict [in the evidence regarding reliability], and the trial court's finding is supported by credible evidence, it will not be disturbed on appeal"). Avery herself testified that she had virtually no experience testing dried samples; she told the officers who brought her the sample that she did not know what test was appropriate for a dried sample and that she would perform the only test she knew. Deann Dabbs, who qualified as an expert in forensic serology and had tested thousands of dried blood samples during her career, testified that the method used by Avery was unapproved and unreliable for testing dried samples. Finally, when Avery used this method to test other dried samples of known type, her results were correct only fifty-eight percent of the time. Dabbs' testimony and Avery's

-

test results provide credible evidence supporting the trial court's finding that the method Avery used "to type the blood taken from the . . . test tube stoppers was unreliable and not scientifically accepted." Therefore, we hold that the trial court did not abuse its discretion in refusing to admit the evidence.

3. REFUSAL TO APPOINT FINGERPRINT AND HANDWRITING EXPERTS

The Commonwealth, upon request, is required to "provide indigent defendants with 'the basic tools of an adequate defense,' and . . . in certain circumstances, these basic tools may include the appointment of non-psychiatric experts." Husske v. Commonwealth, 252 Va. 203, 211, 476 S.E.2d 920, 925 (1996) (citation omitted), cert. denied, 519 U.S. 1154, 117 S. Ct. 1092, 137 L. Ed. 2d 225 (1997). "[A]n indigent defendant seeking the appointment of an expert has the burden of showing a particularized need therefor." Barnabei v. Commonwealth, 252 Va. 161, 171, 477 S.E.2d 270, 276 (1996), cert. denied, 520 U.S. 1224, 117 S. Ct. 1724, 137 L. Ed. 2d 845 (1997). A defendant may not prevail in his pursuit of an expert merely because the science involved is advanced or complicated, see Husske, 252 Va. at 213, 476 S.E.2d at 926, or because he has a mere "hope or suspicion that favorable evidence may be procured," see Barnabei, 252 Va. at 171, 477 S.E.2d at 276.

We hold that the trial court did not abuse its discretion in denying appellant's motion for appointment of a fingerprint

-

expert and a handwriting expert.  See Downing v. Commonwealth, 26 Va. App. 717, 723, 496 S.E.2d 164, 167 (1998).  The argument advanced by appellant prior to trial indicated, at best, that the Commonwealth intended to offer both fingerprint and handwriting evidence.  The evidence introduced at trial linked appellant to exhibits 6, the note proposing sex, and 10, the list of ways to disguise oneself, by handwriting, and exhibit 7, another note, by fingerprints.  However, exhibits 6 and 10 were identified by Timothy Trent as having been in appellant's car; appellant admitted that exhibit 10 was his; and exhibit 7 was found with exhibit 6, which, as set out above, had been linked to appellant by Timothy Trent.  We hold, therefore, that the trial court did not abuse its discretion in holding that appellant failed to demonstrate a particularized need for either expert.

    4.  FOUNDATION FOR ADMISSION OF ATLAS AND OTHER DOCUMENTS

     Appellant contends that the trial court erroneously admitted the atlas and other items Thomas Kidd gave to Deputy Dickson.  He asserts that, without Kidd's testimony, the Commonwealth provided an insufficient foundation for admission of the items.  In addition, he contends that Kidd's conduct in giving the items to Deputy Dickson was a non-verbal assertion constituting hearsay and should have been excluded.

     We note first that appellant did not object to Deputy Dickson's testimony at trial that Thomas Kidd gave him the atlas

-

and other items.  Further, in his pretrial motion, appellant objected only to the admission of Kidd's statements to Dickson, not to any testimony about Kidd's conduct.  Therefore, Rule 5A:18 bars our consideration of this issue on appeal.  We also find no reason to invoke the good cause or ends of justice exceptions to the rule.  In addition, appellant's assignment of error on appeal asks only whether the trial court abused its discretion in denying the motion to exclude the atlas and other documents.  Because appellant did not raise the issue of the admissibility of Kidd's conduct in his pretrial motion, no appeal was granted on this issue.  Therefore, Rule 5A:12(c) also bars our consideration of this issue on appeal.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988).  To establish the necessary foundation for the admission of real evidence, the party offering it must show that it is both relevant and authentic.  See 1 Charles E. Friend, The Law of Evidence in Virginia 13-5, at 546 (4th ed. 1993).

Regarding relevancy, "'[a]ny fact, however remote, that tends to establish the probability or improbability of a fact in issue is admissible.'"  Wynn v. Commonwealth, 5 Va. App. 283, 291, 362 S.E.2d 193, 198 (1987) (citation omitted).  Authenticity of "a tangible, solid object [for which] no

-

chemical analysis is involved" may be established through circumstantial evidence "that the item is what it purports to be . . . and that its condition has not changed materially since its initial discovery."  Friend, supra, at 546; see Wileman v. Commonwealth, 24 Va. App. 642, 648, 484 S.E.2d 621, 624 (1997). "'The court must determine if the circumstantial evidence is sufficient to justify the document's admission; the jury will then, as in all cases, make an independent decision as to whether the document is genuine.'"  Duncan v. Commonwealth, 2 Va. App. 717, 726-27, 347 S.E.2d 539, 544 (1993) (citation omitted).

     The evidence in the record is sufficient to establish both the relevance and the authenticity of Commonwealth's Exhibits 2 through 9, despite the inability of Thomas Kidd to testify at trial about where he obtained the items.  The evidence established that, on the morning of April 13, 1989, Joann and Thomas Kidd were concerned about the victim.  Thomas Kidd went to the victim's house, phoned Joann Kidd sounding "concerned," and immediately returned home "upset."  After calling several relatives to try to locate the victim, Joann and Thomas Kidd reported the victim missing and gave to Officer Daniel Dickson the atlas, Commonwealth's exhibit 2, with several other items, Commonwealth's exhibits 3 through 9, tucked inside it.  Joann Kidd and the victim's husband testified that they had never seen the atlas or any of the other items prior to April 13, 1989, and

-

that, to their knowledge, neither they nor Thomas Kidd nor the victim had any connection to the Knight's Inn or the Post Oak Market and none had purchased the lottery tickets.

Deputy Dickson testified that within hours of receiving the atlas and other items from Thomas Kidd, he found at the victim's nearby residence (1) a map page, Commonwealth's exhibit 12, which had been torn out of the atlas he received from Thomas Kidd, and (2) a list, Commonwealth's exhibit 10. This circumstantial evidence supported a finding that Thomas Kidd found the atlas and other items, Commonwealth's exhibits 2 through 9, at the victim's residence and turned them over to Deputy Dickson, thereby establishing their authenticity.

Other evidence--including appellant's statements to police, the testimony of Timothy Trent and the owner of the Post Oak Market, and the fingerprint and handwriting evidence--supported a finding that the atlas and other items belonged to appellant. The challenged exhibits were relevant in that they tended to prove that appellant was both in Orange County and on the victim's property about the time she disappeared. Because the circumstantial evidence supported a finding that Commonwealth's exhibits 2 through 9 were both relevant and authentic, the trial court did not abuse its discretion in admitting them into evidence.

For these reasons, we hold that the trial court did not err in admitting the contested DNA evidence, excluding the

-

challenged blood typing evidence, refusing to appoint a fingerprint or handwriting expert, and admitting the atlas and other items Thomas Kidd gave to Deputy Dickson.  Therefore, we affirm appellant's convictions.

Affirmed.