COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judge Humphreys and Senior Judge Bumgardner
Argued at Salem, Virginia

PUBLISHED

JAMES SCOTT WITHEROW, II

v.      Record No. 1827-14-3

COMMONWEALTH OF VIRGINIA

OPINION BY
CHIEF JUDGE GLEN A. HUFF
DECEMBER 1, 2015

FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
G. Carter Greer, Judge

John W. Swezey for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General; Elizabeth C. Kiernan, Assistant
Attorney General, on brief), for appellee.

James Scott Witherow, II ("appellant") appeals his conviction for malicious wounding, in violation of Code § 18.2-51.[1] Following a jury trial in the Circuit Court of the City of Martinsville ("trial court"), appellant was sentenced to a total of ten years' incarceration. On appeal, appellant contends that "[t]he trial court erred in denying appellant's tendered instructions 'A' and 'B' which allowed the jury the option of considering the lesser offenses of unlawful wounding and assault and battery." For the following reasons, this Court reverses appellant's conviction for malicious wounding and remands the case for a new trial on that charge if the Commonwealth be so advised.

_____

[1]Appellant was also convicted of use of a firearm in the commission of a felony, in violation of Code § 18.2-53.1, and shooting into an occupied building, in violation of Code § 18.2-279, but these convictions are not challenged on appeal.

## I. BACKGROUND

"When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002) (citing Blondel v. Hays, 241 Va. 467, 469, 403 S.E.2d 340, 341 (1991)). So viewed, the evidence is as follows.

On Sunday, April 14, 2013, appellant, a retired police officer of twenty-five years, was in his apartment with his wife, Marlene Carter ("Carter"), when Carter asked appellant to go to the store to buy some items. While leaving the apartment, appellant passed a row of mailboxes when he noticed that one mailbox, which was associated with an apartment that had been vacant for "two years or more," was left open. Appellant testified that he stuck his fingers in the mailbox "to feel if any mail was in it" and, upon finding none, closed it. Appellant testified that at this point, Carter came outside "cussing" and "want[ing] to know what [appellant] got out of the mailbox." Carter demanded that appellant empty his pockets, which revealed only a set of car keys.

When appellant returned home from the store, he testified that Carter renewed their argument regarding whether appellant had removed something – namely, cigarettes – from the mailbox. Carter then left the apartment to visit a neighbor, Vicky Goins ("Goins"). Upon her return, Carter said, "[l]et me see your will," causing appellant to retrieve it from his top drawer in his bedroom. Carter examined the front page and then threw it at him saying that she would "look at it later." She then retrieved a telephone book to look up divorce attorneys while appellant returned the will to his bedroom. Appellant testified that he decided to call Carter into the bedroom to show her where his will, life insurance, and cemetery plot information are located.

At this point, appellant testified that Carter came into the bedroom and thrust a bowie knife at him. The knife went through his shirttail, which was "blossomed out." According to appellant, Carter took "a couple steps" back and "came at [him]" again. Consequently, appellant "reached up

- 2 -

on the shelf [of the closet], got [his] gun, and just came around and fired." Appellant testified that he "didn't aim . . . . [He] just wanted to scare her and get her away."

Carter was struck in the chest by the bullet, at which point she ran first to Goins' apartment, but when Goins did not answer, she ran to Betty Jo Patterson's ("Patterson") apartment. Appellant testified that after he shot the gun, he threw it on the bed and followed Carter out of the apartment. After appellant arrived at Patterson's apartment, he realized that he had a cut on his index finger.

Carter's version of the events differed significantly. According to Carter, she had been arguing with appellant that day about how appellant was smoking cigarettes against her wishes. During their fight, she asked to see his will, but eventually threw it on the floor saying, "[i]t's a waste of time." She then got a phonebook out to look up divorce attorneys. Carter testified that appellant went into his bedroom and stated, "[c]ome here, I've got something to show you." Carter testified that she entered the room and saw "the barrel of [a] gun pointed at [her]." Carter testified that appellant then shot her in the chest and stated, "I told you I'm getting tired of you calling me an f-ing liar."

At trial, Virginia State Police Special Agent Steve Oliver ("Oliver") described the two shirts that appellant was wearing on the day in question and the cuts he found on each of the shirts. Oliver also testified that he found cuts on appellant's hand and fingers. Special Agent Kevin Heath ("Heath") testified that he found a phonebook lying open, turned to "the lawyers section," a .357 revolver on the bed in appellant's bedroom, and a knife on the floor near the door of Carter's bedroom. Heath also testified that he found small pieces of wood paneling near the knife and that the wood paneling was broken inside the closet in appellant's room.

The jury was instructed, in relevant part, as to the offenses of aggravated malicious wounding and the lesser-included offense of malicious wounding.[2] Additionally, appellant proffered Instructions A and B. Instruction A, which was refused by the trial court, provided,

> The defendant is charged with the crime of malicious wounding. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant shot Marlene Carter; and
>
> (2) That such shooting was with intent to kill or permanently maim, disfigure or disable Marlene Carter; and
>
> (3) That the act was done with malice.
>
> . . . .
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the first two elements of the crime as charged, but that the act was done unlawfully, and not

---

[2] Instruction No. 5, in relevant part, stated:

> The defendant is charged with the crime of aggravated malicious wounding. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant shot, wounded or caused bodily injury to Marleen Carter; and
>
> (2) That such shooting, wounding, or bodily injury was with intent to maim, disfigure, disable or kill Marleen Carter; and
>
> (3) That the act was done with malice; and
>
> (4) That as a result of the act, Marleen Carter was severely injured and was caused to suffer permanent and significant physical impairment.
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find the defendant guilty of aggravated malicious wounding . . . .
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt, elements one (1), two (2), and three (3) but NOT element four (4) of the above elements of the offense as charged, then you shall find the defendant guilty of malicious wounding . . . .

- 4 -

maliciously, then you shall find the defendant guilty of unlawful wounding . . . .

If you find that the Commonwealth has failed to prove beyond a reasonable doubt either malicious wounding or unlawful wounding but you do find beyond a reasonable doubt:

(1) That the defendant willfully touched Marlene Carter without legal excuse or justification; and

(2) That the touching was done in an angry rude, insulting, or vengeful manner then you shall find the defendant guilty of assault and battery . . . .

If you find that the Commonwealth has failed to prove beyond a reasonable doubt any of the above crimes, then you shall find the defendant not guilty.

See Va. Model Jury Instr. Crim. No. G37.100. Instruction B, which was also refused by the trial court, provided,

If you have a reasonable doubt as to the grade of the offense, then you must resolve that doubt in favor of the defendant, and find him guilty of the lesser offense. For example, if you have a reasonable doubt as to whether he is guilty of aggravated malicious wounding or malicious wounding, you shall find him guilty of malicious wounding; if you have a reasonable doubt as to whether he is guilty of malicious wounding or unlawful wounding, you shall find him guilty of unlawful wounding; if you have a reasonable doubt as to whether he is guilty of unlawful wounding or assault and battery, you shall find him guilty of assault and battery; if you have a reasonable doubt as to whether he is guilty at all, you shall find him not guilty.

See Va. Model Jury Instr. Crim. No. 37.500.

Following deliberations, the jury found appellant guilty of malicious wounding, in violation of Code § 18.2-51. This appeal followed.

II. ANALYSIS

On appeal, appellant contends that the trial court abused its discretion by refusing his proposed jury Instructions A and B. Specifically, he argues that these instructions should have

been given because there was more than a scintilla of evidence to demonstrate that appellant lacked malice.

"As a general rule, the matter of granting and denying instructions . . . rest[s] in the sound discretion of the trial court." Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009) (citing Daniels v. Commonwealth, 275 Va. 460, 466, 657 S.E.2d 84, 87 (2008)). The trial court's "broad discretion in giving or denying instructions requested" is reviewed for an abuse of discretion. Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (*en banc*). On appeal, this Court's "sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).

"A defendant is entitled to have the jury instructed only on those theories of the case that are supported by [more than a scintilla of] evidence." Eaton v. Commonwealth, 240 Va. 236, 255, 397 S.E.2d 385, 397 (1990) (quoting Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986)); Williams v. Commonwealth, 64 Va. App. 240, 246, 767 S.E.2d 252, 255 (2015) ("more than a scintilla of evidence must be present to support an instruction" (quoting Eaton, 240 Va. at 255, 397 S.E.2d at 397)). "This Court," however, "has avoided establishing a precise definition for the term 'scintilla' because to do so would be 'neither practical nor helpful.'" Williams, 64 Va. App. at 247, 767 S.E.2d at 256 (quoting Brandau v. Commonwealth, 16 Va. App. 408, 411, 430 S.E.2d 563, 564 (1993)). Rather, "[t]he weight of the credible evidence that will amount to more than a mere scintilla . . . is a matter to be resolved on a case-by-case basis." Woolridge v. Commonwealth, 29 Va. App. 339, 348, 512 S.E.2d 153, 158 (1999) (quoting Brandau, 16 Va. App. at 411-12, 430 S.E.2d at 565).

The Supreme Court has "rejected the concept that a jury instruction on the lesser-included offense must always be given." Vaughn, 263 Va. at 35, 557 S.E.2d at 222 (citing Guss v. Commonwealth, 217 Va. 13, 14, 225 S.E.2d 196, 197 (1976)). Instead, the evidence must "provide the necessary quantum of independent evidence" to support an instruction on the lesser-included offense. Commonwealth v. Leal, 265 Va. 142, 147, 574 S.E.2d 285, 288 (2003). "When the proposed jury instruction touches upon a lesser included offense and there is any credible evidence in the record to support the instruction," however, "failure to give the instruction is reversible error." Williams, 64 Va. App. at 247, 767 S.E.2d at 256 (quoting Brandau, 16 Va. App. at 412, 430 S.E.2d at 565). "Conversely, '[i]f the evidence is sufficient to support a conviction of the crime charged, and there is no independent evidence warranting a conviction [of the lesser-included offense], an instruction on the lesser-included offense need not be given.'" Id. (quoting Vaughn, 263 Va. at 36, 557 S.E.2d at 222-23). Furthermore, the jury's "ability to reject evidence does not supply the affirmative evidence necessary to support a jury instruction." Vaughn, 263 Va. at 36, 557 S.E.2d at 223.

"The element of malicious wounding that distinguishes it from unlawful wounding is malice, expressed or implied, and malice, in its legal acceptation, means any wrongful act done willfully or purposefully." Hernandez v. Commonwealth, 15 Va. App. 626, 631, 426 S.E.2d 137, 140 (1993). "To define malice, [this Court] may look to homicide law 'because the mental-state elements of unlawful wounding are the same as those of voluntary manslaughter.'" Williams, 64 Va. App. at 248, 767 S.E.2d at 256 (quoting Barrett v. Commonwealth, 231 Va. 102, 105, 341 S.E.2d 190, 192 (1986)). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed a purposeful and cruel act without any or without great provocation." Robertson v. Commonwealth, 31 Va. App. 814, 823, 525 S.E.2d 640, 645 (2000) (quoting Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d

- 7 -

422, 426 (1992)).  Indeed, '[m]alice is implied by law from any deliberate, willful, and cruel act against another, however sudden." Epperly v. Commonwealth, 224 Va. 214, 231, 294 S.E.2d 882, 892 (1982).  "Furthermore, '[m]alice may be inferred from the deliberate use of a deadly weapon unless, from all the evidence, there is reasonable doubt as to whether malice existed.'" Williams, 64 Va. App. at 249, 767 S.E.2d at 257 (quoting Avent v. Commonwealth, 279 Va. 175, 201-02, 688 S.E.2d 244, 259 (2010)).[3]

Notwithstanding the above, "[d]eliberate and purposeful acts may nonetheless be done without malice if they are done in the heat of passion." Williams, 64 Va. App. at 249, 767 S.E.2d at 257.  Indeed, "[m]alice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." Barrett, 231 Va. at 106, 341 S.E.2d at 192.  "Heat of passion is determined by the nature and degree of the provocation and may be found upon rage, fear, or a combination of both." Id. (citations omitted).  "Heat of passion excludes malice when provocation reasonably produces fear that causes one to act on impulse without conscious reflection." Graham v. Commonwealth, 31 Va. App. 662, 671, 525 S.E.2d 567, 571 (2000).

Consequently, an accused is "entitled" to "instructions addressing lesser included offenses of malicious wounding," such as unlawful wounding, "only when the evidence as a whole raises a reasonable doubt [as to whether the defendant] acted maliciously." Steward v.

---

[3] The above principles defining malice were accurately stated in granted Jury Instruction No. 9:

> Malice is that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the control of reason. Malice may result from any unlawful or unjustifiable motive including anger, hatred or revenge.  Malice may be inferred from any deliberate willful and cruel act against another, however sudden.

Commonwealth, 10 Va. App. 563, 570, 394 S.E.2d 509, 513 (1990) (citing Miller v. Commonwealth, 5 Va. App. 22, 24-25, 359 S.E.2d 841, 842 (1987)). Turning to the present case, this Court must determine whether there is more than a scintilla of evidence in the record to indicate that appellant acted in the "heat of passion" or otherwise without malice. After reviewing the evidence in the light most favorable to appellant, Vaughn, 263 Va. at 33, 557 S.E.2d at 221, this Court finds that there was.

Appellant's testimony demonstrated that during the course of an extended argument between appellant and Carter, Carter came into the bedroom and "thrust . . . a knife" at him that "went through [his] shirt." Appellant testified that Carter then "stepped back a couple of steps and . . . came at [appellant] again." At this point, appellant grabbed his gun from the top shelf of the closet "and just came around and fired." He testified that he "didn't aim or . . . know where to hit. [He] just wanted to scare her and get her away . . . so [he] could get out of the apartment."

In this testimony, there is more than a scintilla of evidence that would support the theory that appellant lacked malice because he was acting in the heat of passion founded "upon . . . fear." Barrett, 231 Va. at 106, 341 S.E.2d at 192; see Boone v. Commonwealth, 14 Va. App. 130, 133, 415 S.E.2d 250, 251-52 (1992) (A defendant's testimony about his intent may, alone, rise above the quantum of "a mere scintilla" and be enough to require a trial court to give a proffered instruction on the lesser-included offense.). As noted above, "[h]eat of passion excludes malice when *provocation reasonably produces fear* . . . that causes one to act on impulse without conscious reflection." Graham, 31 Va. App. at 671, 525 S.E.2d at 571 (emphasis added). As appellant could have been reasonably provoked to fear when Carter was attempting to stab him with a knife, there is more than a scintilla of evidence to support the conclusion that the shooting was done without malice, in the heat of passion.

The Supreme Court's opinion in Barrett is instructive in the present case. In Barrett, the evidence demonstrated that Barrett, who was charged with malicious wounding, and the victim were in a "fistfight," after which the victim threatened Barrett, stating that their next fight "wouldn't be with fists." 231 Va. at 105, 341 S.E.2d at 192. Subsequently, Barrett encountered the victim at a tavern, causing Barrett to leave because "he wanted to avoid a potential confrontation." Id. at 104, 341 S.E.2d at 191. The victim followed Barrett until "a car pulled up beside the . . . men, and the driver . . . offered Barrett a ride." Id. at 104, 341 S.E.2d at 192. "As Barrett turned toward the car, [Barrett's friend] yelled to Barrett: '. . . watch out; he's got a gun.'" Id. at 105, 341 S.E.2d at 192. "Upon hearing this warning, Barrett, who had been carrying a gun . . . 'swerved and fired' at [the victim]." Id.

At Barrett's trial for malicious wounding, he asked that the jury also be instructed on the lesser-included offense of unlawful wounding; which instruction was refused. Id. On appeal, the Commonwealth argued, as it does here, that appellant's testimony, if believed, would have established self-defense requiring acquittal. Id. at 106, 341 S.E.2d at 193. Consequently, the Commonwealth contended that the evidence did not support an instruction on unlawful wounding because the jury was required to either convict of malicious wounding or find appellant not guilty. Id. The Supreme Court rejected this argument, however, noting that "[a] plea of self-defense and a claim of provoked heat of passion do not conflict with each other." Id. at 106, 341 S.E.2d at 192; see also McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975) ("It is also immaterial that the jury did not believe that the defendant killed in self-defense as defined in the instruction they heard. 'The plea of self-defense and of passion . . . are not in conflict with each other.'" (quoting Wilkins v. Commonwealth, 176 Va. 580, 583, 11 S.E.2d 653, 655 (1940))). Thus, the Supreme Court held that "[t]here was ample evidence to support Barrett's theory of unlawful wounding" because the jury could have concluded, based on

the hostile history between Barrett and the victim, that "Barrett did not act maliciously, but . . .

upon a reasonable provocation, the heat of passion induced by fear." Barrett, 231 Va. at 106-07,

341 S.E.2d at 193.[4]

Similarly, the jury in the present case could have concluded, from appellant's testimony,

that appellant's actions were not done maliciously, but rather upon a reasonable provocation, in

the heat of passion induced by fear. As such, the trial court erred by refusing to instruct the jury

on the lesser-included offense of unlawful wounding. See id. at 107, 341 S.E.2d at 193 ("It is

immaterial that the jury might have rejected the lesser-included offense; if there is evidence

tending to support the lesser offense, a trial court errs in refusing an instruction thereon." (citing

McClung, 215 Va. at 657, 212 S.E.2d at 292)).

Additionally, within Instruction A, appellant asked that the jury be instructed on the

lesser-included offense of assault and battery. "Assault and battery," like unlawful wounding,

"is a lesser included offense of malicious wounding." Boone, 14 Va. App. at 132, 415 S.E.2d at

251 (citing Brown v. Commonwealth, 222 Va. 111, 116, 279 S.E.2d 142, 145 (1981)). While a

conviction for assault and battery cannot stand without evidence showing "an intention to do

---

[4] As noted above, "[t]o define malice, [this Court] may look to homicide law 'because the mental-state elements of unlawful wounding are the same as those of voluntary manslaughter.'" Williams, 64 Va. App. at 248, 767 S.E.2d at 256 (quoting Barrett, 231 Va. at 105, 341 S.E.2d at 192). In the context of homicide law, fear can be "adequately and in fact provoked" to demonstrate heat of passion, but nevertheless be "insufficient for self defense." Ronald J. Bacigal, Virginia Practice: Criminal Offenses and Defenses, Homicide, 365 (2015-16 ed.) (citing McClung, 215 Va. at 657, 212 S.E.2d at 292). For example, the defendant's deadly response may have been unnecessary or the fear unreasonable. Id. (citing Cook v. Commonwealth, 219 Va. 769, 250 S.E.2d 361 (1979)). In these imperfect self-defense cases, "[e]vidence of passion/provocation, from any source, entitles the accused to a voluntary manslaughter instruction." Id. Similarly, when applied in the malicious wounding context, fear can be insufficient to justify self-defense, but nevertheless be sufficient to demonstrate a heat of passion, negating malice. When "there is evidence tending to support the lesser offense," it is for "[a] jury, not the trial court, [to] weigh[] the evidence and assess the credibility of the witnesses" in seeking to determine whether fearful actions were reasonable to justify self-defense, or imperfect, but still negating malice. Barrett, 231 Va. at 107, 341 S.E.2d at 193.

bodily harm – either actual intention or an intention imputed by law, . . . an intent to maim, disfigure or kill is unnecessary to the offense." Id. at 133, 415 S.E.2d at 251.

In the present case, appellant specifically testified that he "didn't aim" at Carter, but "just wanted to scare her and get her away . . . so [he] could get out of the apartment." This testimony provides more than a scintilla of evidence from which the jury could have concluded that appellant did not have the requisite intent to maim, disfigure or kill, which is necessary to support both a malicious and unlawful wounding conviction. See Boone, 14 Va. App. at 133, 415 S.E.2d at 251-52 (A defendant's testimony about his intent may, alone, rise above the quantum of "a mere scintilla" and be enough to require a trial court to give a proffered instruction on the lesser-included offense.); see also McGhee v. Commonwealth, 219 Va. 560, 564, 248 S.E.2d 808, 811 (1978) (noting that "heat of passion" negates the element of malice and that "accident" negates the element of intent).

While it is true that "an intent to maim, disfigure or kill may be" inferred from the use of a deadly weapon, Williams v. Commonwealth, 13 Va. App. 393, 398, 412 S.E.2d 202, 205 (1991) (quoting Fletcher v. Commonwealth, 209 Va. 636, 641, 166 S.E.2d 269, 273 (1969)), this inference is not conclusive as the jury reasonably could have determined, from the evidence when viewed in the light most favorable to appellant, that the inference was inapplicable and did not overcome appellant's testimony. See id. (holding that a defendant's testimony that he did not intend to injure the victim was alone sufficient to justify an instruction on assault and battery as a lesser-included offense in a malicious wounding prosecution). Thus, the trial court also erred by failing to instruct the jury on the lesser-included offense of assault and battery.

Because this Court holds that proffered Instruction A, which outlined unlawful wounding and assault and battery as lesser-included offenses of malicious wounding, should have been granted, it follows that Instruction B, which clarified reasonable doubt as to the degree of

culpability between these lesser-included offenses, should have also been granted.  See Crockett

v. Commonwealth, 187 Va. 687, 695-96, 47 S.E.2d 377, 381 (1948) (noting that an instruction

which clarifies reasonable doubt as to grades of offenses is not a "recital as to [an] evidential

theory offered by [the] accused," but rather "instructs in regard to a legal presumption enjoyed

by the accused as to the grades" of offenses charged).  The jury in the present case was given

Instruction No. 6, which clarified reasonable doubt as to the degree of culpability between

aggravated malicious wounding and malicious wounding.  The Commentary to Virginia Model

Jury Instruction No. 37.500, which is identical to appellant's proposed Instruction B, provides

that when an instruction clarifying reasonable doubt between lesser-included offenses is granted,

it "should include all possible findings."  Under Instruction A, unlawful wounding and assault

and battery are possible findings, and, therefore, Instruction B, which clarifies reasonable doubt

between these possible findings, should have also been granted.

### III.  CONCLUSION

Based on the foregoing, this Court finds that the trial court abused its discretion by

refusing appellant's proposed Instructions A and B and, therefore, reverses appellant's

conviction for malicious wounding and remands the case for a new trial on that charge if the

Commonwealth be so advised.

Reversed and remanded.