COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Russell and Athey
Argued by teleconference


STEVEN WAYNE GLENN, SR.

                                              MEMORANDUM OPINION* BY
v.        Record No. 0938-19-3               JUDGE CLIFFORD L. ATHEY, JR.
                                                  APRIL 28, 2020

COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                               W. Chapman Goodwin, Judge

            Samuel Richard Thomas, Assistant Public Defender, for appellant.

            Liam A. Curry, Assistant Attorney General (Mark R. Herring,
            Attorney General, on brief), for appellee.


       Steven Wayne Glenn, Sr. ("Glenn") appeals his conviction of involuntary manslaughter,

contending that the Circuit Court of Augusta County ("trial court") erred "by denying [Glenn's]

request for a jury instruction on the defense of accident despite it being supported by the

evidence."  For the following reasons, we affirm the trial court's decision.

                                    I.  BACKGROUND

       Glenn fatally shot his thirteen-year-old son in the head at their home in Augusta County

on April 21, 2018.  The Augusta County Sheriff's Office subsequently interviewed Glenn

concerning the shooting after advising him of his Miranda rights.

       During the interview, Glenn stated that on the morning of the shooting, he was discussing

a recently purchased firearm—a Springfield XD .40 caliber pistol ("the firearm")—with his son

("the victim") in Glenn's upstairs bedroom.  Glenn stated that both he and the victim were sitting

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

on the bed as Glenn disassembled the firearm in order to show the victim the proper cleaning and maintenance of the firearm. According to Glenn, the victim was sitting near the foot of the bed, to Glenn's left, while Glenn sat near the middle of the bed disassembling the firearm. Glenn stated that after reassembling the firearm, he "reache[d] across his body and motion[ed] to set the pistol down on the bed surface flat in the direction of [the victim] and as he does, he said he was going to get his cigarette with the same hand."

Glenn claimed that as he laid the firearm flat onto the bed, the gun "went off." However, Glenn admitted that his finger was inside the trigger guard when the firearm discharged and subsequently stipulated, at trial, that the firing of the weapon left gunshot primer residue on his hands. Glenn stated that he did not realize that the victim had been shot until he saw the victim fly back into a chair near the foot of the bed. Glenn was indicted for murder and the use of a firearm in its commission, in violation of Code §§ 18.2-32 and 18.2-53.1.

Allen Shank ("Shank") testified during the trial that, on the day of the shooting, he was driving to a wedding reception and was flagged down by a "young girl and an elderly lady [who] c[a]me bolting out of the house . . . screaming call 9-1-1, he's been shot." Shank immediately contacted the police dispatch and remained on the phone with the dispatcher while entering Glenn's home. Shank located the victim sitting upright in a chair while Glenn, who appeared distraught, emotional, and concerned, covered the victim's forehead. After positioning the victim per the instructions of dispatch, Shank waited until the first responders arrived.

Laura Hollenbeck ("Hollenbeck"), a forensic scientist working for the Virginia Department of Forensic Science, testified that based on her examination and testing, Glenn's firearm had several safety features, including a trigger safety and a grip safety, both of which functioned properly at the time of the shooting. She also testified that when a cartridge was in the chamber of the firearm, an indicator on the weapon reflected that the cartridge was present in

the chamber.  Hollenbeck opined that it would have taken nearly six pounds of force pulling

back on the trigger before the firearm would have discharged.

Assistant Chief Medical Examiner Amy Tharp ("Tharp") also testified for the

Commonwealth that the victim's death came as the result of a single bullet that entered the

victim's forehead above his right eye.  Tharp found that this bullet, which came to rest in the

back left of the victim's head, had traveled in a "front to back and right to left trajectory" with no

deviation up or down.  Tharp further opined that, based on the stippling[1] found around the

victim's forehead, nose, and upper cheek, the firearm was about twelve inches away from the

victim's head when it discharged.  Tharp therefore ruled the victim's death a homicide "based on

the scientific evidence not matching the story that [Glenn] provided," because if the firearm had

been lying flat on the bed when it fired, as Glenn alleged, the victim's "eye level would have to

be just at or below that bed level . . . for that bullet to enter in the forehead and come straight

across to the back."

At the conclusion of all the evidence, Glenn proffered Instruction H:

> Where the defense is that the killing was an accident, the defense is
> not required to prove this fact.  The burden is on the
> Commonwealth to prove beyond a reasonable doubt that the killing
> was not accidental.  If after considering all the evidence you have a
> reasonable doubt whether the killing was accidental or intentional,
> then you shall find [] Glenn not guilty.

The Commonwealth objected to the trial court giving the instruction because the instruction was

"not an accurate statement of the law."  The trial court sustained the objection and refused to

give Instruction H because "you can have an accident where there is a conviction and the way

the instruction reads, if there's an accident, it's to be dismissed."  In denying Instruction H, the

---

[1] Tharp testified that stippling is present when a firearm is fired close to skin or clothing due to "smoke," "flame," or "bits of burning or unburned gun powder" being ejected upon discharge.  When those materials strike the skin, it creates a "sand blasting effect around the wound," known as stippling.

trial judge wrote on the instruction that it was "not appropriate where involuntary [manslaughter is] charged."

The trial court did instruct the jury on involuntary manslaughter in Instruction No. 9 ("Instruction 9"), specifying in the instruction that "[t]he Commonwealth must prove beyond a reasonable doubt each of the following elements of" first-degree murder, including:

> (1) That [Glenn] killed [the victim]; and
> (2) That the killing was malicious; and
> (3) That the killing was willful, deliberate and premeditated.
>
>     . . . .
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt the first element of the offense as charged, has not proved the second and third elements, but has proved that the killing, although unintended, was the direct result of negligence so gross, wanton and culpable as to show a callous disregard of human life, then you shall find [Glenn] guilty of involuntary manslaughter but you shall not fix the punishment until your verdict has been returned and further evidence has been heard by you.
>
> If you find from the evidence that the Commonwealth has failed to prove beyond a reasonable doubt either of the above offenses, then you shall find [Glenn] not guilty.

Both Glenn and the Commonwealth proffered the Virginia Model Jury Instruction recited in Instruction 9, which permitted the jury to find Glenn guilty of involuntary manslaughter. Glenn also failed to object when the trial court instructed the jury accordingly.

After hearing the evidence and instructions, the jury found Glenn guilty of involuntary manslaughter and fixed his sentence at eight (8) years in prison. This appeal followed.

## II. ANALYSIS

"The decision regarding granting or denying a jury instruction generally rests 'in the sound discretion of the trial court.'" Graves v. Commonwealth, 65 Va. App. 702, 707 (2016) (quoting Cooper v. Commonwealth, 277 Va. 377, 381 (2009)). Thus, we review this decision

under an abuse of discretion standard, Witherow v. Commonwealth, 65 Va. App. 557, 565 (2015), but we review *de novo* "whether [the] instruction 'accurately states the relevant law,'" Graves, 65 Va. App. at 707 (quoting Sarafin v. Commonwealth, 288 Va. 320, 325 (2014)).

In doing so, our "sole responsibility . . . is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Cooper, 277 Va. at 381 (quoting Molina v. Commonwealth, 272 Va. 666, 671 (2006)). In addition to "correctly stat[ing] the law," Woolridge v. Commonwealth, 29 Va. App. 339, 348 (1999) (quoting Hatcher v. Commonwealth, 218 Va. 811, 813-14 (1978)), the instruction must be "supported by [more than a scintilla of] evidence," Witherow, 65 Va. App. at 565 (alteration in original) (quoting Eaton v. Commonwealth, 240 Va. 236, 255 (1990)), when viewing the evidence "in the light most favorable to the proponent," id. at 561 (quoting Commonwealth v. Vaughn, 263 Va. 31, 33 (2002)).

"Where the evidence warrants, an accused is entitled to an instruction presenting his theory of accidental killing as a defense." Helmick v. Commonwealth, 38 Va. App. 558, 568 (2002) (quoting Martin v. Commonwealth, 218 Va. 4, 6 (1977)). "However, '[n]o instruction should be given that incorrectly states the applicable law or which would be confusing or misleading to the jury.'" Schmuhl v. Commonwealth, 69 Va. App. 281, 311 (2018) (alteration in original) (quoting Morgan v. Commonwealth, 50 Va. App. 120, 133 (2007)).

Here, even if more than a scintilla of evidence supported Instruction H, the trial court properly denied the instruction for two reasons. First, Instruction H incorrectly stated the law applicable under the facts of this case. Second, in addition to Instruction H incorrectly stating the law, giving both Instruction H and Instruction 9 would have confused the jury as the instructions contradicted each other.

First, the trial court properly found that Instruction H incorrectly stated the applicable law because Instruction H required dismissal of the entire case, including murder, use of a firearm in the commission of murder, and involuntary manslaughter, if the jury had a reasonable doubt as to whether the killing was intentional or accidental. We agree that such an instruction is "not appropriate where involuntary [manslaughter is] charged" because "you can have an accident where there is a conviction and the way the instruction reads, if there's an accident, it's to be dismissed." See Noakes v. Commonwealth, 280 Va. 338, 345 (2010) ("We have defined the common law crime of involuntary manslaughter as 'the killing of one accidentally, contrary to the intention of the parties, in the prosecution of some unlawful, but not felonious, act; or in the improper performance of a lawful act.'" (quoting Mundy v. Commonwealth, 144 Va. 609, 615 (1926))).

Instruction 9, which instructed the jury on involuntary manslaughter as Glenn and the Commonwealth agreed was appropriate here, reflected that an involuntary manslaughter conviction was permitted as an alternative to a murder conviction. Although Instruction H could have been proper if it specified that the accident defense did not require acquittal in the case of involuntary manslaughter, Instruction H, as written, was properly denied. See Waters v. Commonwealth, 39 Va. App. 72, 80 (2002) (affirming the trial court's denial of an accident instruction that "required an outright acquittal if the jury had a reasonable doubt as to whether the killing was intentional" when an involuntary manslaughter conviction was a possible outcome).[2]

Instruction 9 permitted the jury to find Glenn guilty even if the killing was unintentional or accidental if the Commonwealth proved beyond a reasonable doubt that the accidental killing

---

[2] We observe that King v. Commonwealth, 64 Va. App. 580, 592 (2015) (*en banc*), overruled the other holding in Waters, but King does not affect the outcome of this matter.

was a direct result of Glenn's negligence where that negligence was so gross, wanton, and culpable as to show a callous disregard of human life. In fact, the jury found Glenn guilty of involuntary manslaughter based on the facts and instructions provided. Instruction 9 correctly informed the jury that the burden of proof rested with the Commonwealth and cautioned that if the Commonwealth failed to prove beyond a reasonable doubt either murder or involuntary manslaughter, the law required acquittal.

Second, providing Instruction H along with Instruction 9 would have confused the jury as the instructions contradicted each other. Although Instruction 9 permitted an involuntary manslaughter conviction in some instances of accidental killing, Instruction H required an acquittal in any accidental killing. Thus, jurors would have been confused or misled into believing that an accidental killing would require an acquittal without consideration of involuntary manslaughter.

Because Instruction H incorrectly stated the applicable law and because providing it with Instruction 9 would have been confusing or misleading to the jury, the trial court properly denied Instruction H.

III. CONCLUSION

For the foregoing reasons, this Court affirms the decision of the trial court.

Affirmed.