COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Russell, Ortiz and Raphael
Argued by videoconference


DEION LINCOLN SMALLWOOD

v.        Record No. 1053-21-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE STUART A. RAPHAEL
JUNE 7, 2022


FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

Stephen A. Mutnick (Winslow, McCurry & MacCormac, PLLC, on
brief), for appellant.

Sharon M. Carr, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Deion Lincoln Smallwood of voluntary manslaughter and unlawfully

shooting within an occupied dwelling, rejecting Smallwood's claim that he shot the victim in

self-defense.  On appeal, Smallwood claims that, because he was the only witness to the

shooting, the jury had to accept his version of what happened.  But Smallwood's version of

events at trial differed in key respects from what he told detectives when he was arrested, after

fleeing the scene.  Because the evidence sufficed to enable a rational jury to find Smallwood

guilty of both charges, we affirm.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires that we "discard the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On the evening of January 16, 2020, the forty-year-old victim, Phillip Adkins, was on the second floor of the split-level home that he shared with his mother, Virginia Adkins. Adkins's mother walked by her son's home office on the second floor and saw someone she did not recognize sitting at the desk. Later, while watching television downstairs, she heard at least five rapid gunshots coming from the second floor. She charged up the steps, calling out for her son. She ran into Adkins's office and saw him lying face down on the floor. Finding Adkins unresponsive, she ran downstairs and called the police; she noticed that the back door was wide open, an exit that led to the backyard. The police arrived minutes later.

Henrico County Police Officer F.P. Currin was first on the scene, followed by several officers. Currin found Adkins lying face down in the corner of the office, bleeding profusely from the face and head. Two unsheathed knives were lying neatly next to one another on the desk. Without touching the knives, Currin and the other officers moved Adkins's body to check for a pulse. Paramedics pronounced Adkins dead at the scene.

Dr. Chrystal Van Dusen, an assistant chief medical examiner, performed an autopsy on Adkins, concluding that Adkins's death was caused by multiple gunshot wounds. At least three of the bullets were shot from more than three feet away; the distance from which the other shots were fired could not be determined. Adkins's most significant wound was a shot through the back of his head. Another bullet entered his back and exited through his chest. Van Dusen could not determine the number of shots fired or in what order the bullets entered Adkins's body.

Detective Mark Downer photographed the crime scene and collected various firearms and ammunition from the home, though no guns were found near the desk on which the knives were

sitting. Downer found three unloaded firearms in the office closet—a rifle (without a stock) on the closet floor and two pistols stored in a "metal shelving unit." No spent bullet casings were found that matched those firearms. Downer also found a loaded magazine sitting on top of a Tupperware container on the floor against the office wall. Seven plastic bags containing 23.46 grams of marijuana were scattered on the floor around the magazine. Finally, Downer found a nine-millimeter pistol on the nightstand in the Adkins's bedroom.

The two knives sitting on the desk in the office where Adkins was killed were photographed and sent for forensic analysis. Although partial fingerprints were recovered, they were insufficient to permit comparisons. No blood was found on either knife.

Detective Downer also collected an iPhone and a flip phone. The flip phone belonged to Adkins; the iPhone belonged to Smallwood.

The day after the shooting, Smallwood knocked on the back door of the home of Darlene Wessels and Dan McDonald, asking to stay for a couple of nights. He said his father had kicked him out of his house following an argument. Wessels and McDonald agreed to let Smallwood sleep on their couch for two nights. Wessels also let Smallwood borrow her smartphone, which he used to search the internet for information about a "[H]enrico county shooting," the "Henrico County Police Beat nightly," and Henrico County incident reports. Neither Wessels nor McDonald observed any injury to Smallwood.

McDonald was watching television with Smallwood that evening when the news aired that Adkins had been shot. Smallwood got upset, sobbed, and admitted to McDonald that Smallwood was the person the police were looking for. Smallwood told McDonald that Adkins "came at him with a knife." McDonald responded, "if that's the case . . . it's self defense," emphasizing that Smallwood was not making his case better by failing to turn himself in.

- 3 -

Smallwood agreed to let McDonald take him to the public defender's office or the police station the next day.

But several hours later, at about 4:00 a.m., police arrived at the house and arrested Smallwood. Detectives Ensor and Seay transported Smallwood to their office and recorded their interview. They too observed no injuries on Smallwood's hands or face. During the interview, Smallwood called Adkins "crazy" and a "rough guy." Smallwood identified a couple of instances when Adkins had "put his hands" on him.

Smallwood said that, on the night of the shooting, he had been visiting with Adkins for about an hour, smoking cigarettes and listening to music, when Adkins "came" at him with a "knife in each hand." Smallwood said that he shot Adkins with a revolver out of fear. Smallwood then left through the back door, threw away the gun, and ran to the apartment of McDonald and Wessel. Smallwood said that, because he fired the gun when Adkins was coming at him with the knives, the knives should be found on the floor next to Adkins's body.

Smallwood was charged with second-degree murder, discharging a firearm within an occupied dwelling, and using a firearm in the commission of a felony. At trial, Smallwood admitted to shooting Adkins but claimed that he did so in self-defense. Smallwood testified that he had spent time with Adkins once or twice a week over the past several years. They would often sit in Adkins's office, listen to music, smoke, and chat. Adkins earned money by selling marijuana and making YouTube videos. He said that Adkins owned two handguns that Smallwood believed were kept on a shelf in the office desk. He also claimed that Adkins kept a shotgun next to where he would sit.

Smallwood also described several violent episodes involving Adkins. In 2018, he said, Adkins punched him in the jaw four or five times. In 2019, Adkins grew angry, grabbed Smallwood by the shirt, and claimed to be "the type to kill" people who crossed him. At other

- 4 -

times, Adkins said, "I'll shoot your ass" or brandished a gun while laughing. A week before the shooting, they pushed each other, and Adkins swung his fist at Smallwood. The defense also introduced Adkins's 2004 conviction for assault and battery.

Smallwood said that, on the night of the shooting, Adkins had confronted him in front of a convenience store, where they began to fight. Smallwood pulled out his gun and pointed it at Adkins, causing him to back down. Adkins then drove them both to his house, where they went up to his office through the back door and smoked marijuana, which Smallwood described as a "peace offering."

According to Smallwood, Adkins accused him of stealing marijuana, which Smallwood denied. Adkins then became angry, flaring his nostrils and showing his teeth. While they remained seated, Adkins picked up the two knives. Smallwood felt fear and said he was bracing for whatever might happen next. Smallwood said this was the first time that Adkins had held up a weapon to him "in an angry way instead of a joking way."

Alluding to his recorded statement to Detectives Ensor and Seay, Smallwood acknowledged that, "Originally, I said [Adkins] came at me with these knives." He now said that Adkins "put the knives down" before continuing towards him. As Adkins began coming around the desk, he reached down to an area that Smallwood could not see. Smallwood said he feared for his life, not knowing if Adkins would pull out a gun. So Smallwood shot him.

On cross-examination, Smallwood clarified that Adkins took only two steps toward him—without the knives—before Smallwood started shooting. When asked to point out the shelf in the desk where Smallwood claimed guns were stored, Smallwood answered that it was unclear from the photograph.

The trial court denied Smallwood's motions to strike at the close of the Commonwealth's case-in-chief and at the close of all the evidence. The jury convicted Smallwood of voluntary

manslaughter and unlawfully shooting within an occupied dwelling.[1] The trial court denied

Smallwood's motion to set aside the verdict. It sentenced Smallwood to a prison term of seven

years for the voluntary-manslaughter charge, three years for unlawfully shooting within an

occupied dwelling, and an additional three years, suspended on condition of post-release

supervision for three years. Smallwood was also ordered to pay restitution to Adkins's mother in

the amount of $3,600.

## ANALYSIS

Smallwood claims on appeal that the evidence did not support his convictions because he

testified that he shot Adkins in self-defense. He argues that the Commonwealth presented no

evidence to the contrary. We disagree.

### A. Standard of review

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is

presumed correct and will not be disturbed unless it is plainly wrong or without evidence to

support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original)

(quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does

not ask itself whether *it* believes that the evidence at the trial established guilt beyond a

reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204,

228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v.*

*Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193

(2009)).

---

[1] The jury acquitted Smallwood of using a firearm in the commission of a felony. *See*
*Gains v. Commonwealth*, 39 Va. App. 562, 570 (2003) ("Consistency in jury verdicts is not
required.").

## B. *Self-defense*

Smallwood admitted to intentionally shooting Adkins but claimed that he did so in self-defense. "Self-defense is an affirmative defense . . . , and in making such a plea, a 'defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors.'" *Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)). For Smallwood to prevail on his self-defense claim, the jury needed to find (1) that Smallwood "reasonably believed that [he] was in danger of serious bodily harm or death," *id.* (quoting *Sands*, 262 Va. at 730); and (2) that Smallwood was "confronted with deadly force" and had to use "deadly force in return," *Foote v. Commonwealth*, 11 Va. App. 61, 69 (1990). To show reasonable fear, Smallwood had to show that Adkins made an "overt act" that seriously threatened his safety. *Jones*, 71 Va. App. at 86. "'[B]are fear that a person intends to inflict serious bodily injury on the accused, however well-grounded,' is insufficient without an overt act." *Id.* (alteration in original) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 975 (1977)).

Here, the jury could properly find that Smallwood's fear of Adkins was unreasonable or that Adkins did not threaten him in the manner Smallwood claimed. Smallwood said in his post-arrest interview that Adkins was "coming at" him with a knife in each hand, agreeing that the knives should be found on the floor next to the body. But the knives were found on the desk, neatly sitting there. Adkins's body was found against the wall, not by the desk. And Smallwood did not mention in his police interview that Adkins came at him while reaching for a gun.

At trial, Smallwood mentioned for the first time the presence of multiple guns in the room and claimed that Adkins put down the knives before reaching for a gun. The photographic evidence, however, did not corroborate the existence of a top shelf of the desk, where Smallwood

said that Adkins kept his guns. And the fact that Adkins was shot twice from behind suggested that he was facing away from Smallwood, not rushing at him. When the evidence is viewed in the light most favorable to the Commonwealth, the jury could reasonably find that Adkins did not commit an overt act that would justify a reasonable fear by Smallwood that he was in imminent and serious danger.

Likewise, the jury could have reasonably concluded that Smallwood did not need to use deadly force. "[T]he amount of force used must be reasonable in relation to the harm threatened." *Foote*, 11 Va. App. at 69 (quoting *Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989)). Here, the knives were found nowhere near Adkins and the guns were in the closet— unloaded and inaccessible. Smallwood fired one bullet at Adkins's head and multiple other shots. It is for "'[the] jury, not the trial court, [to] weigh[ ] the evidence and assess the credibility of the witnesses' in seeking to determine whether fearful actions were reasonable to justify self-defense, or imperfect, but still negating malice." *Dandridge v. Commonwealth*, 72 Va. App. 669, 684 (2021) (second and third alternations in original) (quoting *Witherow v. Commonwealth*, 65 Va. App. 557, 569 n.4 (2015)); *see Jones*, 71 Va. App. at 95 ("[T]he mere act of reaching toward a waistband even when coupled with the speculative fear that the reach may be for a weapon, is not sufficient as a matter of law to constitute an overt act that justifies the preemptive use of deadly force."). The jury here could have reasonably found that Smallwood used deadly force disproportionate to any reasonable apprehension of harm.

Smallwood argues that, because he "was the only person in that room who could provide direct evidence as to why the shooting occurred," his testimony was arbitrarily disregarded and the law of self-defense requires his acquittal. It is true that "undisputed facts" sometimes "may establish self-defense as a matter of law." *Lynn v. Commonwealth*, 27 Va. App. 336, 353 (1998), *aff'd*, 257 Va. 239 (1999).

But even accepting that premise, Smallwood's testimony is not undisputed. It was contradicted by physical evidence, forensic analysis, and Smallwood's own statements to the police just after arrest. And because Smallwood fled the scene, the jury could have "disbelieve[d] the self-serving testimony of [Smallwood] and . . . conclude[d] that [he] [was] lying to conceal his guilt." *Lopez v. Commonwealth*, 73 Va. App. 70, 81 (2021) (quoting *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018)).

That the jury apparently credited Smallwood's claim that he did not act intentionally to kill Adkins did not require the jury to accept Smallwood's self-defense account. The jury need not accept a witness's testimony in its entirety; it "may accept or reject" such testimony "in whole or in part." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Perkins v. Commonwealth*, 31 Va. App. 326, 331 (2000)). Whether Smallwood "prove[d] circumstances sufficient to create a reasonable doubt that he acted in self-defense [wa]s a question of fact" for the jury. *Meade v. Commonwealth*, 74 Va. App. 796, 807 (2022) (quoting *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016)).

The rule that Smallwood advocates—that the jury must accept a defendant's self-defense claim when the defendant is the only witness to the killing—would also create a perverse incentive for perpetrators to kill any witnesses to the crime. Smallwood's counsel was unable at oral argument to offer a sensible limiting principle for that proposed rule, which finds no support in Virginia law.

In short, the jury reasonably rejected Smallwood's self-defense claim.

### C. Voluntary manslaughter

Smallwood was charged with second-degree murder, but the jury convicted him of the lesser-included offense of voluntary manslaughter. "[T]o reduce a homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon

- 9 -

reasonable provocation," in other words, without malice. *Dandridge*, 72 Va. App. at 681 (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 643 (1997)). "[Heat of passion] excludes malice when provocation reasonably produces fear that causes one to act on impulse without conscious reflection." *Id.* (alteration in original) (quoting *Witherow*, 65 Va. App. at 567). "'[W]hether provocation, shown by credible evidence, is sufficient to engender the [heat of passion] necessary to rebut the presumption of malice arising from a homicide is a question of fact' to be decided by the jury." *Id.* at 682 (quoting *Woods v. Commonwealth*, 66 Va. App. 123, 131-32 (2016)).

Here, a rational jury could acquit Smallwood of second-degree murder but convict him of manslaughter based on the evidence of Smallwood's volatile and unpredictable friendship with Adkins—a relationship that involved threats and brandishing of guns. Three guns and two knives were found at the crime scene. Smallwood testified about a physical altercation with Adkins earlier that night at a convenience store, in which Smallwood had drawn his gun to protect himself. The jury heard Smallwood describe Adkins as "rough" and "crazy," and it also heard about other instances when Adkins had acted violently toward Smallwood. For instance, Adkins in 2018 punched Smallwood in the jaw four or five times. In 2019, Adkins claimed he would kill people who crossed him. Adkins also threatened Smallwood by saying, "I'll shoot your ass" and by brandishing a gun while laughing. Smallwood said that Adkins did that for the first time in "an angry way" the night Smallwood shot him.

"In the context of homicide law, fear can be 'adequately and in fact provoked' to demonstrate heat of passion, but nevertheless be 'insufficient for self defense.'" *Id.* at 684 (quoting *Witherow*, 65 Va. App. at 569 n.4). "[I]f fear was adequately and in fact provoked, but it is insufficient for self defense, the resultant killing is voluntary manslaughter." *Id.* at 683 (quoting *Couture v. Commonwealth*, 51 Va. App. 239, 249 (2008)). Thus, although it rejected

the self-defense claim, the jury could have accepted that Smallwood had an unreasonable fear of danger that caused him in the heat of passion to use deadly force against Adkins.

### D. *Shooting within an occupied dwelling*

Smallwood also assigns error to his conviction for shooting within an occupied dwelling. His counsel forthrightly acknowledged at oral argument that this claim was not preserved in the trial court, *see* Rule 5A:18, nor set out in the argument section of Smallwood's opening brief, *see* Rule 5A:20(e). He argued that, were we to reach the merits, this assignment of error would rise or fall based on whether Smallwood shot Adkins in self-defense. The Commonwealth agreed with that assessment. And so do we. Assuming for argument's sake that this assignment of error has not been waived, it fails on the merits because—as shown above—the jury reasonably rejected Smallwood's self-defense claim.

### CONCLUSION

We find no basis to set aside either conviction.

*Affirmed*.